UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

TROY ALEXANDER,

                 Plaintiff,

       -v-                              5:17-CV-1195

CITY OF SYRACUSE, COUNTY
OF ONONDAGA, DETECTIVE
RORY GILHOOLEY, and
LASHAUNA MONAHAN,

                 Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

COUNTY OF ONONDAGA,

                 Cross-Claimant,

       -v-

CITY OF SYRACUSE and
DETECTIVE RORY GILHOOLEY,

                 Cross-Defendants.[1]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                    OF COUNSEL:

OFFICE OF K. FELICIA DAVIS       K. FELICIA DAVIS, ESQ.
Attorneys for Plaintiff
P.O. Box 591
Syracuse, NY 13201

---

[1] The electronic docket report maintained by the Court for this action contains several errors that appear to have been generated internally. These include, but are not limited to, an entry that indicates Detective Gilhooley has filed a cross-claim against himself. The Clerk of the Court will be directed to amend the docket sheet to conform with the caption set forth here.

CITY OF SYRACUSE                                    ERICA T. CLARKE, ESQ.
  CORPORATION COUNSEL
Attorneys for Defendants City of Syracuse
  and Detective Rory Gilhooley
233 East Washington Street
Room 300 City Hall
Syracuse, NY 13202

ONONDAGA COUNTY                                    CAROL. L. RHINEHART, ESQ.
  DEPARTMENT OF LAW
Attorneys for Defendant County
  of Onondaga
John H. Mulroy Civic Center
421 Montgomery Street, 10th Floor
Syracuse, NY 13202

DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

Plaintiff Troy Alexander ("Alexander" or "plaintiff") has filed this civil rights action

pursuant to 42 U.S.C. § 1983 and related state law against defendants City of Syracuse

(the "City"), County of Onondaga (the "County"), Syracuse Police Department ("SPD")

Detective Rory Gilhooley ("Detective Gilhooley"), and Lashauna Monahan ("Monahan").

Alexander's eight-count amended complaint asserts claims for unlawful search and

seizure, false arrest, malicious prosecution, defamation, intentional infliction of emotional

distress, and violations of the New York State Constitution.  The County has answered the

complaint and asserted a cross-claim for apportionment of liability against the City and

Detective Gilhooley (collectively the "City defendants").

For their part, however, the City defendants have moved pursuant to Federal Rule of

Civil Procedure ("Rule") 12(b)(6) seeking to dismiss several of Alexander's state and federal

claims as well as the County's cross-claim for contribution. The motion has been fully briefed and will be considered on the basis of the submissions without oral argument.

## II. **BACKGROUND**

The following facts are taken from Alexander's operative pleading, Dkt. No. 39, and are assumed true for purposes of the City defendants' motion to dismiss.

Alexander is a forty-nine-year-old African-American man who lives at 1906 South State Street in the City of Syracuse. See Am. Compl. ¶¶ 5, 12. At the time of the events giving rise to this lawsuit, plaintiff worked for the City's Department of Public Works ("DPW"). Id. ¶ 5.

On October 24, 2016, Detective Gilhooley and other SPD officers entered Alexander's home without a warrant or his consent. Am. Compl. ¶ 12. This group of SPD officers "put [p]laintiff out of his home physically," and did not allow him to re-enter. Id. ¶ 13. Other SPD officers also "caused two of [p]laintiff's cars, [a] 2002 Ford Explorer and [a] 2006 Cadillac STS, to be towed from his home." Id. ¶ 14. Allegations found elsewhere in plaintiff's pleading suggest that the impetus for this interference with plaintiff, his home, and his property was a police investigation into accusations made by Monahan, which involved either a controlled drug buy and/or an alleged sexual assault.[2] Id. ¶¶ 24-25, 32-34.

As Alexander explains, SPD officers, presumably Detective Gilhooley, forced Monahan "into service as a confidential informant" and then instructed her to attempt to make a "controlled buy" of drugs from him. Am. Compl. ¶ 32. Plaintiff alleges that no such

---

[2] At some point during this process, Tereia Duff ("Duff"), a resident in Alexander's home, "was found with marijuana, and drugs near her that they attempted to attribute to plaintiff" even though they did not see any drugs "upon their initial sweep of the premises." Am. Compl. ¶ 15.

"buy" ever occurred because he is not involved in any drug activity.  Id.  Plaintiff further

alleges Monahan was "conscripted into working with [the police]."  Id. ¶ 33.

In any event, the SPD officers did not allow Alexander to return to his home at all that

day.  See Am. Compl. ¶¶ 15-16.  And when plaintiff tried to return home the next day, SPD

officers continued to deny him entry.  Id. ¶ 17.  Plaintiff alleges that "although he informed

them he hadn't committed any crimes, they continued with their actions of searching the

premises without permission or plaintiff's consent."  Id.

Alexander decided he would "walk across the street to a convenience store, [known as

the] Middle East Market, to see if he could get a copy of the store's video surveillance, which

captured the front of his residence in addition to other areas around the store."  Am.

Compl. ¶ 18.  When plaintiff tried to cross the street to reach the store, "he was taken down

by Detective Gilhooley."  Id. ¶ 19.  Plaintiff alleges this occurred because the detective "was

aware of the surveillance video" at the store.  Id. ¶ 20.

Detective Gilhooley transported Alexander to the "Criminal Investigation Division" and

attempted to question him.  Am. Compl. ¶ 21.  When plaintiff refused to speak with him and

requested an attorney, "he was told by Detective Gilhooley that because he didn't want to

talk to him he would charge him."  Id.

Another detective, Detective Stonecypher, walked Alexander from the "Public Safety

Building" over the "Justice Center."  Am. Compl. ¶ 22.  According to plaintiff, Detective

Stonecypher made statements "which plaintiff understood to mean that Detective

Stonecypher was in on his being charged along with Detective Gilhooley."  Id. ¶ 22.

Alexander was charged with a variety of drug offenses, including Criminal Possession

of a Controlled Substance in the Third Degree in violation of N.Y. Penal Law § 220.16,

Criminal Possession of a Controlled Substance in the Seventh Degree in violation of N.Y. Penal Law § 220.03, and three counts of Criminally Using Drug Paraphernalia in the Second Degree in violation of N.Y. Penal Law § 220.50(1)-(3). Am. Compl. ¶ 23.

At this point, Alexander alleges that Detective Gilhooley "re-interviewed" Monahan and "coerced her to make up information." Am. Compl. ¶ 24. According to plaintiff, Monahan's "initial statement made no mention that plaintiff was involved, or even present." Id. ¶ 25. Plaintiff alleges that Monahan "was forced into another interview," where she eventually "stated that plaintiff was the black male that participated in raping her." Id.

On October 30, 2016, presumably as a result of this coerced accusation, Alexander was "falsely charged with Rape, Sodomy, and False Imprisonment." Am. Compl. ¶ 26. Plaintiff alleges that Monahan falsely identified plaintiff's home as the location of the sexual assault. Id. ¶ 34. Plaintiff further alleges he paid his bail immediately but was not released from custody until his attorney intervened on his behalf. Id. ¶¶ 26-29.

On November 7, 2016, DPW initiated workplace disciplinary proceedings against Alexander on the basis of the criminal charges filed against him. Am. Compl. ¶ 30. Plaintiff was put on a ten-day suspension. Id. According to plaintiff, the arrest and discipline also "caused the media to report slanderous and libelous statements concerning false charges to the public." Id. ¶ 31.

On August 22, 2017, the Onondaga County District Attorney's Office "admitted in open court" that (1) a surveillance tape secured from the convenience store across the street from Alexander's home and (2) the lack of forensic linking plaintiff to the charged crimes "was responsible for their motion to dismiss [the] charges." Am. Compl. ¶ 35. The criminal proceedings against plaintiff have since been terminated in his favor. Id.

III.  **LEGAL STANDARD**

"To survive a Rule 12(b)(6) motion to dismiss, the '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Ginsburg v. City of Ithaca, 839 F. Supp. 2d 537, 540 (N.D.N.Y. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Although a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief', FED. R. CIV. P. 8(A)(2), more than mere conclusions are required." Id.  "Indeed, '[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)).  "Dismissal is appropriate only where plaintiff has failed to provide some basis for the allegations that support the elements of his claims." Id.; see also Twombly, 550 U.S. at 570 (requiring "only enough facts to state a claim to relief that is plausible on its face").

"When ruling on a motion to dismiss, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor." Morris v. N.Y. State Police, 268 F. Supp. 3d 342, 459 (N.D.N.Y. 2017) (quoting Faiaz v. Colgate Univ., 64 F. Supp. 3d 336, 344 (N.D.N.Y. 2014)).  "In making this determination, a court generally confines itself to the 'facts stated on the face of the complaint, . . . documents appended to the complaint or incorporated in the complaint by reference, and . . . matters of which judicial notice may be taken.'" Id. (quoting Goel v. Bunge, Ltd., 820 F.3d 554, 559 (2d Cir. 2016)).

IV.  **DISCUSSION**

At the outset, the City defendants have expressed some uncertainty about the precise contours of Alexander's different state and federal law causes of action.  City Defs.' Mem.,

Dkt. No. 42-6 at 5-6 (setting forth a spreadsheet of plaintiff's various claims).[3] This confusion is understandable. For instance, and as these defendants point out, plaintiff has mistakenly used the label "sixth cause of action" to refer to two different groups of theories of liability in his pleading. Am. Compl. ¶¶ 60-63 (labeling defamation claims as "Sixth Cause of Action"); Am. Compl. ¶¶ 64-68 (labeling emotional distress claim as "Sixth Cause of Action").

To further complicate matters, throughout his amended complaint Alexander has mostly failed to connect his various theories of liability to the particular defendant or defendants allegedly responsible for each violation. Instead, plaintiff has opted to use a "shotgun pleading," a document that makes it "virtually impossible to know which allegations of fact are intended to support which claim(s) for relief." Croons v. N.Y. State Office of Mental Health, 18 F. Supp. 3d 193, 199 (N.D.N.Y. 2014) (citation omitted).

While this kind of pleading probably requires a smaller investment of time and fewer resources to draft and file, in the longer run it amounts to more work for everyone involved in the litigation. It leaves the defendants confused about which one of them has been sued (and for what). It requires the plaintiff to explain in other filings made during the course of the litigation "what he really meant to say" when he drafted the pleading. And most importantly, it wastes judicial resources, since the task of sorting out all this confusion always falls squarely on the Court itself.

Based on a review of the operative pleading and his opposition memorandum, Alexander appears to be pressing what amounts to mostly standard fare for a federal civil rights lawsuit arising from a police investigation and later criminal prosecution: (1) a § 1983

---

[3] Pagination corresponds with CM/ECF.

claim for unlawful search and seizure of his residence; (2) a § 1983 claim for unlawful seizure of his two automobiles; (3) a § 1983 claim for false arrest; (4) a § 1983 claim for malicious prosecution; (5) a § 1983 claim for municipal liability; (6) a state law claim for false arrest; (7) a state law claim for malicious prosecution; (8) a state law claim for violations of the New York State Constitution; (9) a state law claim for infliction of emotional distress; and (10) a state law claim premised on various theories of defamation.

On the merits, the City defendants' partial dismissal motion argues that (1) most of Alexander's state law claims are barred because he failed to comply with the notice of claim requirements imposed by state and local law; (2) the malicious prosecution claims fail to allege certain necessary elements; (3) the defamation claims are not pleaded with sufficient particularity; (4) the emotional distress claim is duplicative of other, more specific theories of relief alleged in the pleading; (5) the false arrest and imprisonment claims are barred by the existence of probable cause; (6) the state constitutional claim is duplicative of other, more specific claims; (7) the City is immune from liability for punitive damages; (8) the operative pleading fails to state a § 1983 claim for municipal liability against the City; and (9) the County's cross-claims are barred because it also failed to comply with the notice of claim requirements imposed by state and local law.

## A. <u>Notice of Claim</u>

First, the City defendants argue that Alexander failed to properly serve a notice of claim "with respect to his claims for equal protection under the New York State constitution, malicious prosecution, defamation per se and/or slander, and intentional infliction [*sic*] of emotional distress."  City Defs.' Mem., Dkt. No. 42-6 at 8.

Alexander responds that (1) he served two notices of claim while acting pro se; (2) each of these filings clearly assert he was "falsely arrested and imprisoned" and his property was seized; and (3) the City cannot show it suffered any prejudice from deficiencies in these two notices and therefore the Court should exercise its discretion to disregard any defects it finds in them.  Pl.'s Opp'n, Dkt. No. 49 at 3-4.

The City defendants reply that Alexander should not be allowed to pursue theories of liability that were not referenced, indirectly or otherwise, in either of his notices of claim.  City Defs.' Reply, Dkt. No. 50 at 6.

"Under New York law, a notice of claim is a mandatory precondition to bringing a tort claim against a municipality or any of its officers, agents or employees."  Grant v. City of Syracuse, 2017 WL 5564605, at *10 (N.D.N.Y. Nov. 17, 2017) (Kahn, J.) (citations omitted).[4]

"To pass muster, the notice must include enough information to enable the municipality to investigate the claim adequately.  Merely providing notice of the occurrence is not adequate to constitute notice of a particular claim."  Nieblas–Love v. N.Y. City Hous. Auth., 165 F. Supp. 3d 51, 76 (S.D.N.Y. 2016) (citation and internal quotation marks omitted).  "The fact that a cause of action not mentioned in the notice of claim arises out of

_____

[4] The Departments of the New York Appellate Division are currently split on the issue of whether or not an individual must be specifically named in a plaintiff's notice of claim before being sued as an individual defendant in a subsequent civil action.  Compare Goodwin v. Pretorious, 962 N.Y.S.2d 539, 545 (N.Y. App. Div. 4th Dep't 2013) ("If the legislature had intended that there be a requirement that the individual employees be named in the notices of claim, it could easily have created such a requirement."), with Cleghorne v. City of N.Y., 952 N.Y.S.2d 114, 117 (N.Y. App. Div. 1st Dep't 2012) ("[T]he action cannot proceed against the individual defendants because they were not named in the notice of claim.").  Because the New York Court of Appeals is likely to adopt the Fourth Department's reasoning in Goodwin, the more lenient rule will be applied here.  See, e.g., Bailey v. City of N.Y., 79 F. Supp. 3d 424, 453 (E.D.N.Y. 2015) (noting department split but adopting the Fourth Department's conclusion).

- 9 -

the same incident as enumerated claims is not pivotal; rather, the nature of the claim and the theory of liability are determinative." Id.

Alexander's amended complaint alleges that he complied with this state law requirement by serving a notice of claim before bringing this suit. Am. Compl. ¶ 3. However, plaintiff did not attach a notice of claim to his pleading. Instead, the City defendants have submitted as exhibits the two different notices of claim they received from plaintiff. See Ex. A to Clarke Decl., Dkt. No. 42-2; Ex. B to Clarke Decl., Dkt. No. 42-3.

Generally speaking, it is inappropriate to consider matters outside the four corners of the pleading when evaluating a defendant's 12(b)(6) motion to dismiss. However, because (1) a proper notice of claim is "integral" to the state law causes of action and (2) Alexander does not appear to contest the accuracy or authenticity of the two notices supplied by the City defendants, Exhibits A and B to the Clarke Declaration are properly considered here. See, e.g., Canzoneri v. Inc. Vill. of Rockville Centre, 986 F. Supp. 2d 194, 206 (E.D.N.Y. 2013) (considering notice of claim supplied by defendants on motion to dismiss); Fisher v. Cty. of Nassau, 2011 WL 4899920, at *3 (E.D.N.Y. Oct. 13, 2011) (evaluating sufficiency of pro se notice of claim offered by defendants).

Alexander's first pro se notice of claim, which is sworn to on November 28, 2016, names as defendants the "City of Syracuse and Police Department" and states that:

> Troy Alexander hereby gives notice that I wish to bring multi lawsuits for the arrest and imprisonment and wrongful impoundment of my vehicles on October 24, 25, and October 26[,] 2016 as well as the bail money forefited [sic] from such charges[.]

Ex. A to Clarke Decl., Dkt. No. 42-2.

Alexander's second pro se notice of claim, which is sworn to on September 11, 2017,

adds the "Onondaga County Sheriff" and "Lashauna Monahan" as named defendants and

again states that:

> Troy Alexander hereby gives notice that I wish to bring multi law suits for the arrest and imprisonment and wrongfall [*sic*] impoundment of vehicles as well as the illeagle [*sic*] search of 1906 South State St.  Plaintiff's home on or about October 24th, 25th, and 26, 2016 and any and all bail money forefited [*sic*] from such charges[.]

Ex. B to Clarke Decl., Dkt. No. 42-3.

Upon review, Alexander's state law constitutional claims, claims for defamation per se

and/or slander, and claims for intentional infliction of emotional distress are barred by his

failure to include them in his notice of claim.  However, plaintiff's state law malicious

prosecution claim is not.  Callwood v. City of Kingston, 2017 WL 4357459, at *8 (N.D.N.Y.

Sept. 29, 2017) (permitting state law malicious prosecution claim to proceed despite notice of

claim requirement).

Alexander correctly argues that federal courts can, and sometimes do, choose to

overlook certain defects in a plaintiff's notice of claim.  See, e.g., Burbar v. Inc. Vill. of

Garden City, 961 F. Supp. 2d 462, 468 (E.D.N.Y. 2013) (denying motion to dismiss where

plaintiff's notice of claim asserted ten claims but failed to include certain others that "arose

from the same underlying arrest"); Grant, 2017 WL 5564605, at *10 (declining to find

trespass and defamation claims barred where notice of claim was "thirty-nine pages and

include[d] ample factual allegations regarding the events").

However, because this state law requirement is supposed to be construed "strictly,"

courts typically refuse to permit a plaintiff, whether pro se or counseled, to avoid dismissal of

a state law theory of liability that is not even referenced in a notice of claim. <u>Fisher</u>, 2011 WL 4899920, at *3 (dismissing certain state law claims because of pro se plaintiff's "failure to indicate the legal theories on which Plaintiff now proceeds" in his underlying notice of claim).

This seems especially true when a plaintiff attempts to add claims for negligent or intentional infliction of emotional distress. <u>See, e.g.</u>, <u>Nieblas–Love</u>, 165 F. Supp. 3d at 77 (dismissing emotional distress claims because plaintiff's notice of claim "did not implicitly or explicitly notify [the municipal agency] that he intended to pursue [these] independent tort claims"); <u>Canzoneri</u>, 986 F. Supp. 2d at 206-07 (dismissing emotional distress claims where plaintiff's notices of claim were "devoid of any reference to emotional distress"). Accordingly, the state law constitutional claims, the claims for defamation, and the emotional distress claims will be dismissed against the City defendants.

### B. <u>Malicious Prosecution</u>

Next, the City defendants argue Alexander's malicious prosecution claims must be dismissed because he has failed to plausibly allege (1) the prosecution was initiated without probable cause; (2) the charges were terminated in his favor; or (3) any facts demonstrating actual malice. City Defs.' Mem. at 10. Plaintiff responds that Detective Gilhooley consciously ignored the exculpatory surveillance video evidence from the convenience store and chose to charge plaintiff just because he refused to cooperate with him. Pl.'s Opp'n at 5.

Generally speaking, "[c]laims of malicious prosecution arising under Section 1983 are governed by the same standard applied under state law." <u>Frederique v. Cty. of Nassau</u>, 168 F. Supp. 3d 455, 477 (E.D.N.Y. 2016) (citing <u>Russell v. Smith</u>, 68 F.3d 33, 36 (2d Cir. 1995)).

To prevail on a claim of malicious prosecution, a plaintiff must establish:  (1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice.  Savino v. City of N.Y., 331 F.3d 63, 72 (2d Cir. 2003).

In addition, a § 1983 malicious prosecution claim requires that "there must be a seizure or other perversion of proper legal procedures implicating the claimant's personal liberty and privacy interests under the Fourth Amendment."  Washington v. Cty. of Rockland, 373 F.3d 310, 316 (2d Cir. 2004).

At this early juncture, Alexander's malicious prosecution claims survive dismissal.  Plaintiff alleges that (1) Detective Gilhooley coerced Monahan into accusing plaintiff; (2) Detective Gilhooley then consciously ignored the exculpatory surveillance video evidence favorable to plaintiff; (3) Detective Gilhooley chose to charge plaintiff just because he refused to cooperate; (4) all of the charges were terminated in his favor; and (4) the County prosecutor admitted, in open court, that there was no evidence on which to base any charges against him.  Those allegations, considered together, are sufficient to avoid dismissal right now.  See, e.g., Am. Compl. ¶¶ 20-22, 35.

Alexander should note, however, that the Second Circuit has recently clarified a frequently litigated aspect of § 1983 claims for malicious prosecution brought in New York federal courts:  the favorable termination element.  See Lanning v. City of Glens Falls, 908 F.3d 19, 28 (2d Cir. 2018) (affirming dismissal on the pleadings of malicious prosecution claim because the termination of charges in plaintiff's case was "consistent with dismissal on any number of procedural or jurisdictional grounds, all of which fail to affirmatively indicate innocence").  If plaintiff plans to keep his federal or state law malicious prosecution claims intact following any future motion practice, he should be prepared to explain why the Second

Circuit's holding in <u>Lanning</u> does not command their dismissal.  For now, however, the City defendants' motion to dismiss plaintiff's malicious prosecution claims will be denied.

### C.  <u>Defamation</u>

As set forth above, Alexander's various state law defamation theories are barred by New York's notice of claim requirement.  Even assuming otherwise, plaintiff has failed to plead any of these theories with the requisite particularity.  They are therefore also subject to dismissal on this basis.

"Defamation, consisting of the twin torts of libel and slander, is the invasion of the interest in a reputation and good name.  Generally, spoken defamatory words are slander; written defamatory words are libel."  <u>Albert v. Loksen</u>, 239 F.3d 256, 265 (2d Cir. 2001) (citations and internal quotation marks omitted).

"To prevail on a claim for either libel or slander under New York law, plaintiff must show (i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) of and concerning the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting [defamation] *per se*, and (vii) not protected by privilege."  <u>Neal v. Asta Funding, Inc.</u>, 2014 WL 3887760, at *2 (S.D.N.Y. June 17, 2014) (citations and internal quotation marks omitted).

Alexander's amended complaint alleges in conclusory fashion that:

> The conduct of Defendants City of Syracuse and County of Onondaga as public/governmental actors to cause false information to be disseminated via media[,] both television and/or print to make false reports concerning plaintiff['s] arrest and/or charges without any basis in law or fact and without sufficient factual information.

Am. Compl. ¶ 61.

As the City defendants point out, this bare accusation fails to inform the reader about the specific information alleged to be false. Thai v. Cayre Grp., Ltd., 726 F. Supp. 2d 323, 329 (S.D.N.Y. 2010) ("A defamation claim is only sufficient if it adequately identifies the purported communication, and an indication of who made the communication, when it was made, and to whom it was communicated." (citation and internal quotation marks omitted)).

It can be inferred from the parties' submissions and the general tenor of Alexander's amended complaint that his defamation claims are directed at the City and County's release of information concerning the fact of his arrest and prosecution on criminal charges.

But Alexander himself acknowledges that he was in fact arrested by Detective Gilhooley and then charged with crimes, first for drugs and then for sexual assault (albeit allegedly without sufficient evidence and/or for improper reasons or with an improper purpose). Am. Compl. ¶¶ 19, 23, 26.

Under these circumstances, Alexander cannot sustain a claim for defamation. See, e.g., Adelson v. Harris, 973 F. Supp. 2d 467, 487 (S.D.N.Y. 2013) (observing that statement must be "provably false" to constitute actionable defamation)

### D. Emotional Distress

As with his defamation claims, Alexander's emotional distress claims are barred by New York's notice of claim requirement. However, plaintiff also appears to have abandoned this type of claim in his opposition submission, and for good reason: regardless of the notice of claim issue, it too is subject to dismissal.

"Under New York law, a claim for intentional infliction of emotional distress requires a showing of (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection

between the conduct and the injury; and (4) severe emotional distress." Romero v. City of N.Y., 839 F. Supp. 2d 588, 628-29 (quoting Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999)).

"Liability will be found 'only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Romero, 839 F. Supp. 2d 628-29 (quoting Howell v. N.Y. Post Co., 592 N.Y.S.2d 350, 353 (N.Y. 1993)).

The standard for asserting an intentional infliction of emotional distress claim is "rigorous, and difficult to satisfy." Howell, 592 N.Y.S.2d at 353 (citations omitted). Indeed, an emotional distress claim is "highly disfavored" under New York law and "is to be invoked only as a last resort." Turley v. ISG Lackawanna, Inc., 774 F.3d 140, 158 (2d Cir. 2014) (citations omitted).

As the New York Court of Appeals recognized in Howell, it has rejected every claim for emotional distress it has considered "because the alleged conduct was not sufficiently outrageous." Howell, 592 N.Y.S.2d at 353. Accordingly, "[t]hose few claims of intentional infliction of emotional distress that have been upheld [in New York] were supported by allegations detailing a longstanding campaign of deliberate, systematic, and malicious harassment of the plaintiff." Seltzer v. Bayer, 709 N.Y.S.2d 21, 23 (N.Y. App. Div. 1st Dep't 2000).

Alexander's amended complaint makes a half-hearted attempt to adhere to this demanding standard by alleging in conclusory fashion that "defendants carried out a campaign of unreasonable search and seizures, false arrest, [and] malicious persecution [*sic*] without sufficient factual information." Am. Compl. ¶ 65.

But this pro forma language is insufficient to overcome the high bar imposed by New York law.  If anything, the conduct alleged by Alexander falls squarely within the ambit of traditional tort liability.  Naccarato v. Scarselli, 124 F. Supp. 2d 36, 44 (N.D.N.Y. 2000) (dismissing on summary judgment plaintiff's emotional distress claim as duplicative of his more specific tort theories); see also D'Angelo–Fenton v. Town of Carmel, 470 F. Supp. 2d 387, 400 (S.D.N.Y. 2007) (dismissing emotional distress claims against police officers and municipal entity).

## E.  False Arrest & Imprisonment

The City defendants argue Alexander's false arrest claims must be dismissed because he has failed to plead a lack of probable cause.  City Defs.' Mem. at 15.  Plaintiff responds that he has sufficiently alleged a § 1983 claim for false arrest and a related state law claim for false arrest and imprisonment based on his specific allegations of conduct attributable to Detective Gilhooley.  Pl.'s Opp'n at 7.

Claims for "false arrest" and "false imprisonment" are "synonymous" under New York law, and both are "substantially the same" as a § 1983 claim for false arrest.  Jackson v. City of N.Y., 939 F. Supp. 2d 235, 248 (E.D.N.Y. 2013).

"Under New York law, an action for false arrest requires that the plaintiff show that (1) the defendant intended to confine him, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged."  Ackerson v. City of White Plains, 702 F.3d 15, 19 (2d Cir. 2012).

"To avoid liability for a claim of false arrest, an arresting officer may demonstrate that either (1) he had probable cause for the arrest, or (2) he is protected from liability because he has qualified immunity."  Simpson v. City of N.Y., 793 F.3d 259, 265 (2d Cir. 2015).

"A police officer has probable cause to arrest when he has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" Jackson, 939 F. Supp. 2d at 249 (quoting Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996)).

Upon review, Alexander's state and federal false arrest claims survive dismissal. At this early stage of the proceedings, it cannot be determined whether probable cause existed to arrest plaintiff. See, e.g., Jurkowitsch v. City of N.Y., 2015 WL 8489964, at *5 (E.D.N.Y. Dec. 9, 2015) ("[A]t this stage of the proceedings, it is impossible to determine whether [defendants] had probable cause to arrest Plaintiff, and the Court declines to decide this issue based on the pleadings alone.").

After all, under certain circumstances an officer's awareness of facts supporting a defense—such as knowledge of the existence of exculpatory surveillance footage—can even eliminate probable cause. See, e.g., Folk v. City of N.Y., 243 F. Supp. 3d 363, 372 (E.D.N.Y. 2017) (collecting cases). It is too early to make those determinations here. Accordingly, the City defendants' motion to dismiss plaintiff's state and federal false arrest claims will be denied.

## F. New York Constitutional Tort

The City defendants argue Alexander's claims under the New York State Constitution should be dismissed because they are duplicative of other, more specific remedies available to him. City Defs.' Mem. at 16.

Defendants are correct. "Where, as here, adequate remedies are available under § 1983, a plaintiff has no private right of action under the New York State

Constitution." <u>Wierzbicki v. Cty. of Rensselaer, N.Y.</u>, 2015 WL 4757755, at *6-*7 (N.D.N.Y. Aug. 12, 2015) (Sharpe, J.) (citation and internal quotation marks omitted); <u>see also</u> <u>Krug v. Cty. of Rensselaer</u>, 559 F. Supp. 2d 223, 248 (N.D.N.Y. 2008) (McAvoy, J.) ("Because all state constitutional law claims are also asserted as Section 1983 claims, all such claims are dismissed.").

### G. Municipal Liability

The City defendants argue that Alexander has failed to plausibly allege a claim for municipal liability under § 1983.  City Defs.' Mem. at 18-20.  As defendants put it, "the complaint is light on facts and heavy on conclusory, boilerplate language."  <u>Id</u>. at 20.  Plaintiff responds by invoking the City's ongoing refusal to work with the Civilian Review Board.  Pl.'s Opp'n at 9.

"Before a municipality can be held liable under § 1983, it must be shown to have been 'the moving force of the constitutional violation.'"  <u>Carmichael v. City of N.Y.</u>, 34 F. Supp. 3d 252, 262-63 (E.D.N.Y. 2014) (quoting <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690-91 (1978)); <u>see also</u> <u>Cash v. Cty. of Erie</u>, 654 F.3d 324, 341-42 (2d Cir. 2011) (equating "moving force" with "proximate cause").

"In order to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove:  (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury."  <u>Roe v. City of Waterbury</u>, 542 F.3d 31, 36 (2d Cir. 2008) (citation omitted).

"The fifth element reflects the notion that 'a municipality may not be held liable under § 1983 solely because it employs a tortfeasor.'"  <u>Cowan v. City of Mt. Vernon</u>, 95 F.

Supp. 3d 624, 643 (S.D.N.Y. 2015) (quoting Bd. of Cty. Comm'rs v. Brown, 520 U.S. 397, 403 (1997)).  Importantly, this element "can only be satisfied where a plaintiff proves that a 'municipal police of some nature caused a constitutional tort.'"  Roe, 542 F.3d at 36 (citation omitted).  However, a "municipal policy may be pronounced or tacit and reflected in either action or inaction."  Cash, 654 F.3d at 334; see also Kern v. City of Rochester, 93 F.3d 38, 44 (2d Cir. 1996) ("The policy or custom need not be memorialized in a specific rule or regulation.").

"Accordingly, a plaintiff may satisfy this fifth element with evidence of:  '(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.'"  Benacquista v. Spratt, 217 F. Supp. 3d 588, 599-600 (N.D.N.Y. 2016) (quoting Cowan, 95 F. Supp. 3d at 637).

The City defendants have the better of this argument.  This Court is well familiar with the contours of § 1983 Monell liability.  See, e.g., Grant, 2017 WL 5564605, at *15-*16 (denying summary judgment on municipal liability claim against the City of Syracuse); Hulett v. City of Syracuse, 253 F. Supp. 3d 462, 500-502 (N.D.N.Y. 2017) (articulating on summary judgment a theory of municipal liability premised on a widespread failure to discipline SPD officers).

But neither <u>Hulett</u> nor <u>Grant</u> stand for the proposition that the City is somehow now on the hook as a named defendant in every § 1983 action that involves one or more members of the Syracuse Police Department. "Even at the motion-to-dismiss stage, a plaintiff cannot merely assert the existence of a municipal policy or custom in conclusory terms, but rather must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." <u>Benacquista</u>, 217 F. Supp. 3d at 600 (citation and internal quotation marks omitted).

Alexander's amended complaint fails to plausibly establish an all-important link in the causal chain leading to <u>Monell</u> liability. Among other things, plaintiff has failed to demonstrate how the alleged misconduct by Detective Gilhooley and/or the other unnamed, unidentified officers that took place on this occasion was caused or encouraged by a policy or custom attributable to the municipality itself. Instead, plaintiff has made only generalized accusations about the strained relationship between SPD leadership and the City's Civilian Review Board. These kind of conclusory allegations are insufficient to survive a motion to dismiss. Accordingly, the City defendants' motion to dismiss the § 1983 claim for municipal liability against the City will be granted.[5]

### H. The County's Cross-Claim

Finally, the City defendants argue the County's cross-claim must be dismissed because it too failed to properly serve a notice of claim. City Defs.' Mem. at 21-22. The County responds that a notice of claim is not required where, as here, another municipal

---

[5] The City defendants contend that Alexander's request for punitive damages must be dismissed to the extent it is asserted against the City itself (as opposed to Detective Gilhooley) in connection with one or more § 1983 claims. However, because the § 1983 claims against the City will be dismissed, it is unnecessary to resolve this question right now.

entity merely seeks to assert a cross-claim for an apportionment of tort liability. County Def. Mem., Dkt. No. 48-1 at 4.

For now, this motion will be denied. Generally speaking, "[a]n action for contribution may be maintained between concurrent, successive, independent, alternative, and even intentional tort-feasors, who have caused the 'same injury' to plaintiff." Wolongevicz v. Town of Manlius, 2018 WL 3769857, at *19 (N.D.N.Y. Aug. 8, 2018) (Sannes, J.) (citations omitted).

However, the only apparent basis on which this cross-claim might ever become relevant is on Alexander's *state law* false arrest or *state law* malicious prosecution claims. Thomas v. City of Troy, 293 F. Supp. 3d 282, 301 (N.D.N.Y. 2018) (Suddaby, J.) (explaining that cross-claims for contribution cannot be asserted to mitigate § 1983 liability).

Even then, it is unclear how either of these claims will ultimately satisfy the "same injury" requirement. Although Alexander makes general references to the Onondaga County District Attorney's Office and to Assistant District Attorney Maureen Berry ("ADA Berry"), Am. Compl. ¶ 7, it is unclear on what basis plaintiff might seek to pursue a claim against the County that would overlap with his remaining claims against the City defendants.

Notably, Alexander has not named ADA Berry as a defendant, presumably because he is aware of the broad immunity from individual § 1983 liability afforded to prosecutors. Flagler v. Trainor, 663 F.3d 543, 546 (2d Cir. 2011) ("Prosecutors are generally immune from liability under 42 U.S.C. § 1983 for conduct in furtherance of prosecutorial functions that are intimately associated with initiating or presenting the State's case."); see also Opuku v. Cty. of Suffolk, 123 F. Supp. 3d 404, 416 (E.D.N.Y. 2015) (internal quotation

marks and citation omitted) ("Prosecutorial immunity from § 1983 liability is broadly defined, covering virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate."). In any event, it is sufficient for now to observe that the County has answered plaintiff's operative complaint, a fact which renders these ruminations on apportionment of liability academic.

## V. CONCLUSION

Alexander's § 1983 claims against Detective Gilhooley for unlawful search and seizure, false arrest, and malicious prosecution remain for discovery. So too do plaintiff's state law claims against the City defendants for false arrest and malicious prosecution. See, e.g., Fiedler v. Incandela, 222 F. Supp. 3d 141, 169 (E.D.N.Y. 2016) ("Unlike claims arising under Section 1983, a municipality may be vicariously liable for the common law torts of its employees."). However, plaintiff's § 1983 claims against the City must be dismissed. So too must his state law claims for defamation, emotional distress, and violations of the constitution against both City defendants.

To the extent he has alleged facts plausibly giving rise to liability, Alexander's various claims still remain against the County (which has filed an answer) and Monahan (who has not). Indeed, there is currently a motion for default judgment pending against Monahan. That motion must be denied. Plaintiff's original complaint is no longer the operative pleading and therefore Monahan's default on the prior pleading should be vacated as moot. See, e.g., Allstate Ins. Co. v. Yadgarov, 2014 WL 860019 at *8 (E.D.N.Y. Mar. 5, 2014) (collecting cases).

Alexander should take note that the bulk of the legal theories pleaded in his amended complaint are not cognizable against a cooperating witness, or even a confidential informant

who is "pressed into service" by the police, as plaintiff alleges Monahan was here.  Cf. McLaughlin v. Barron, 2018 WL 1872535, at *3-*4 (S.D.N.Y. Jan. 24, 2018) (Report & Recommendation) (declining to award damages against defaulting defendants based on § 1983 due to failure to satisfy state action requirement), adopted by 2018 WL 993627 (S.D.N.Y. Feb. 20, 2018).

Alexander is advised to consider voluntarily discontinuing this action against Monahan.  If, however, plaintiff plans pursues a renewed default judgment against this particular defendant, he should be prepared to explain in significant detail how the facts alleged in his operative pleading render Monahan liable under the particular circumstances of this case.

Therefore, it is

ORDERED that

1.  The City defendants' partial motion to dismiss is GRANTED in part and DENIED in part;

2.  Plaintiff's state law defamation, emotional distress, and constitutional claims are DISMISSED against the City of Syracuse and Detective Gilhooley;

3.  Plaintiff's § 1983 municipal liability claims against the City of Syracuse are DISMISSED;

4.  Plaintiff's § 1983 claims for search and seizure, false arrest, and malicious prosecution REMAIN for discovery;

5.  Plaintiff's state law claims for false arrest and malicious prosecution REMAIN for discovery;

6.  The City defendants' motion to dismiss the County's cross-claim for apportionment of state law tort liability is DENIED;

7.  Alexander's motion for entry of default judgment against defendant Monahan is DENIED;

8.  The Clerk's entry of default against defendant Monahan is VACATED;

9.  The City defendants shall file and serve an answer to plaintiff's operative pleading; and

10.  The Clerk of the Court is directed to amend the docket report to conform with the instructions in footnote 1.

IT IS SO ORDERED.

_____
United States District Judge

Dated:  December 13, 2018
        Utica, New York.