**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**TROY ALEXANDER,**

                                    **Plaintiff,**

        **vs.**                                            **1:17-CV-1195**
                                                          **(MAD/TWD)**

**CITY OF SYRACUSE, COUNTY OF**
**ONONDAGA, and DETECTIVE RORY**
**GILHOOLEY,**

                                    **Defendants.**
_____

**APPEARANCES:**                              **OF COUNSEL:**

**THE BOIES LAW FIRM, PLLC**              **JERRY BOIES, ESQ.**
535 5th Avenue - Ste 4th Floor
New York, New York 10017
Attorneys for Plaintiff

**CITY OF SYRACUSE CORPORATION**          **DANIELLE R. SMITH, ESQ.**
**COUNSEL**                                **TODD M. LONG, ESQ.**
233 East Washington Street                 **HEATHER L. DAVIS, ESQ.**
Room 300 City Hall
Syracuse, New York 13202
Attorneys for Defendants City of Syracuse
and Detective Rory Gilhooley

**ONONDAGA COUNTY DEPARTMENT**            **JOHN E. HEISLER, JR., ESQ.**
**OF LAW**                                 **KATHERINE B. FELICE, ESQ.**
John H. Mulroy Civic Center                **ERIN M. WELCH FAIR, ESQ.**
421 Montgomery Street, 10th Floor
Syracuse, New York 13202
Attorneys for Defendant County of Onondaga

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

1

On October 28, 2017, Plaintiff Troy Alexander ("Plaintiff") commenced this civil rights action pursuant to 42 U.S.C. § 1983 ("§ 1983") and state law.  *See* Dkt. No. 1.  In sum, the original complaint alleged that Defendants falsely arrested him, improperly searched his home and seized his vehicles, initiated a malicious prosecution, and improperly kept him incarcerated after he posted bail, in the course of investigating a gang rape and torture that had allegedly occurred from the afternoon of October 23, 2016, until the early morning of October 24, 2016. *See id.*  On June 25, 2018, Plaintiff filed his second amended complaint.  *See* Dkt. No. 39. Plaintiff brings his claims against Defendants Rory Gilhooley ("Defendant Gilhooley"), his employer the City of Syracuse (the "City" and, together with Defendant Gilhooley, "City Defendants"), as well as the County of Onondaga (the "County").

After more than eight years of litigation, this matter is scheduled for trial on January 26, 2026.  Presently before the Court are motions *in limine* filed by Plaintiff and City Defendants, as well as respective oppositions thereto.  *See* Dkt. Nos. 182, 191, 200, 201.  For the reasons herein, the motions are granted in part, denied in part, and reserved on in part.

## II. BACKGROUND

### A.    Factual Background

The Court assumes the parties' familiarity with the factual background underlying this action; the following is a brief recitation.

On October 24, 2016, after receiving a report of a brutal sexual assault at Plaintiff's home located at 1906 South State Street in Syracuse, New York ("1906 S. State" or "the residence"), the Syracuse Police Department ("SPD") dispatched officers to the residence.  There, officers entered 1906 S. State and searched and seized the residence for approximately twelve-and-a-half hours before seeking a search warrant.  Officers also looked through the windows of, and then towed,

two of Plaintiff's cars.  After obtaining and executing a warrant, officers discovered narcotics and

drug paraphernalia in Plaintiff's bedroom.  The City and County then brought a series of criminal

charges against Plaintiff, which, respectively, charged offenses relating to burglary, narcotics, and

a sexual assault.  Plaintiff posted bail after the first two sets of charges, but was not immediately

released.  The same happened after Plaintiff posted bail in connection with the sexual assault.

**B.    Procedural Background**

This action has a lengthy procedural history.  The following is a discussion of the relevant

parts thereof.

On September 28, 2021, City Defendants filed a motion under Rule 56 of the Federal

Rules of Civil Procedure for summary judgment.  *See* Dkt. No. 119.  United States District Judge

David N. Hurd awarded summary judgment to Defendants on all claims.  *See* Dkt. Nos. 130, 138.

Plaintiff appealed and the Court of Appeals for the Second Circuit vacated and remanded the

award of summary judgment in part and affirmed in part.  *See* Dkt. Nos. 153, 154.

The Circuit held that (1) Plaintiff's claims arising from the warrantless entry into and the

search and seizure of his home (including his false arrest and malicious prosecution claims)

present triable issues of fact; and (2) gaps in the evidentiary record preclude summary judgment

for the City and County on Plaintiff's state law claims arising from his continued detention after

posting bail.  *See* Dkt. No. 153.  In accordance with the Circuit's directives, the following claims

remain for trial: (1) Fourth Amendment violation for the entry and seizure of Plaintiff's home,

including any initial warrantless searches that may have occurred (a § 1983 cause of action

against Defendant Gilhooley); (2) false arrest causes of action arising from Plaintiff's arrest for

burglary and related charges (a § 1983 cause of action against Defendant Gilhooley and New

York State law causes of action against Defendant Gilhooley and the City); (3) false

3

imprisonment causes of action arising from the failure to release Plaintiff after he posted bail (New York State law causes of action against the City and the County); and (4) malicious prosecution causes of action arising from Plaintiff's arrest and prosecution for burglary and related charges (a § 1983 cause of action against Defendant Gilhooley and New York State law causes of action against Defendant Gilhooley and the City). *See id.*

On May 13, 2025, this matter was reassigned to the undersigned for all further proceedings. S*ee* Dkt. No. 162. Trial is scheduled to commence on January 26, 2026. In advance of trial, Plaintiff and City Defendants have moved *in limine* for the admission and/or preclusion of certain evidence. *See* Dkt. Nos. 182, 191. The County did not file an *in limine* motion.

Plaintiff requests the following: (1) preclusion of evidence of prior convictions or bad acts; (2) preclusion of evidence related to dismissed criminal charges; (3) preclusion of testimony or photographs that indicate L.M. was assaulted at 1906 S. State; (4) preclusion of evidence related to the search of vehicles seized from Plaintiff's property; (5) that this Court require that the trial testimony "conform to Second Circuit holdings and may not contradict or relitigate established rulings"; (6) preclusion of character evidence; and (7) preclusion of qualified immunity as a defense. Dkt. No. 191 at 3-18.

City Defendants request that: (1) out-of-court statements related to Defendant Gilhooley's seizure of 1906 S. State and out-of-court statements related to Plaintiff's arrest for burglary be permitted; (2) testimony regarding prostitution and the sale of cocaine at 1906 S. State be permitted; (3) Captain David Metz be allowed to testify; (4) Plaintiff be precluded from testifying or arguing about the causes of action previously dismissed in this matter; (5) the Court dismiss the false arrest and false imprisonment claims against the City which arise from Plaintiff's delayed

release after posting bail; (6) if the Court does not dismiss the false arrest and false imprisonment claims against the City, the jury be instructed that Syracuse City Court is not a department or agency of the City of Syracuse; (7) the Court preclude medical records that are not supported by qualified expert medical evidence, such as testimony from a medical professional; and (8) testimony elicited by Plaintiff be limited to the extent of Plaintiff's Rule 26 disclosure. *See* Dkt. No. 182-19 at 6-26.

Plaintiff and Defendants have responded in opposition to the *in limine* motions. *See* Dkt. Nos. 200, 201.

### III. DISCUSSION

**A.    Motions *in Limine***

A motion *in limine* enables the Court to make an advance ruling on the admissibility of certain anticipated trial evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *see also Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "A court should exclude evidence on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *Coleman v. Durkin*, 585 F. Supp. 3d 208, 212 (N.D.N.Y. 2022). Generally, all "[r]elevant evidence is admissible" unless otherwise provided by an Act of Congress, the United States Constitution, or the Federal Rules of Evidence. Fed. R. Evid. 402. For instance, Rule 403 grants "the trial court broad discretion to exclude even relevant evidence if its probative value is substantially outweighed by the danger of confusion of the issues or if it would be needlessly cumulative." *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1193 (2d Cir. 1989) (citing Fed. R. Evid. 403; *United States v. Carter*, 801 F.2d 78, 83 (2d Cir. 1986); *United States Martinez*, 775 F.2d 31, 37 (2d Cir. 1985)). Courts considering motions *in limine* may reserve decision until trial so that the motion is placed in the appropriate factual context. *See Nat'l Union*

*Fire Ins. Co. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996). The Court is also "free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling" at trial as "the case unfolds, particularly if the actual testimony differs from what was contained in the [movant's] proffer." *Luce*, 469 U.S. at 41-42.

**B.       Interpreting the Second Circuit's Opinion**

The dispositive motion practice and appellate record in the case, in sum, occurred as follows: (1) on December 13, 2018, Judge Hurd granted in part the City Defendants' motion to dismiss Plaintiff's amended complaint; (2) after discovery, Judge Hurd granted City Defendants' motion for summary judgment on all of Plaintiff's remaining claims in a Memorandum-Decision and Order, dated December 1, 2021 (the "MDO"); (3) by virtue of summary judgment in City Defendants' favor, Judge Hurd granted the County summary judgment as well, in a Memorandum-Decision and Order dated January 6, 2022 (collectively with the MDO, the "Decisions"); (4) Plaintiff appealed the Decisions; and (4) on March 14, 2025, the Second Circuit decided Plaintiff's appeal, holding that triable issues of fact precluded summary judgment on certain of Plaintiff's claims and, thus, vacated and remanded the Decisions in part and affirmed the Decisions in part. *See* Dkt. No. 153; *Alexander v. City of Syracuse*, 132 F.4th 129, 137 (2d Cir. 2025) (recounting the procedural history of this matter).[1]

Both in his affirmative *in limine* motion and his opposition to City Defendants' motion, Plaintiff misinterprets the Opinion and invites this Court to adopt his misinterpretations when setting the parameters of what evidence is admissible at trial. Thus, before analyzing the

---

[1]  For purposes of this Memorandum-Decision and Order, the Court will refer to the Second Circuit's Opinion dated March 14, 2025, as "the Opinion." The Opinion is docketed in this matter at Dkt. No. 153 and published in the Federal Reporter, 4th Series at 132 F.4th 129.

substantive pre-trial legal issues raised by the parties, the Court will discuss what the Second Circuit held (and what it did not hold) in the Opinion.

Plaintiff makes a series of assertions in his motion *in limine* that misstate the impact of the Opinion. First, Plaintiff asserts that "[t]he Second Circuit recognized that there is no evidence that any assault occurred inside Plaintiff's home, and no physical evidence tying the house or Plaintiff to a sexual assault." Dkt. No. 191 at 6. Second, Plaintiff claims that "[t]he Second Circuit has already held that the officers lacked evidence of exigent circumstances and that there was ample time between L.M.'s hospital interview and the arrival of officers at Plaintiff's home to seek a warrant." *Id.* at 8. Third, Plaintiff contends that "the probable-cause theory for the arrest, that Plaintiff 'lost his license or privilege' to enter his own home, was expressly rejected by the Second Circuit as unsupported by the record." *Id.* at 17.

And, in one section of his motion, Plaintiff lists four "holdings" from the Opinion that he believes "frame the legal landscape for the jury's work" and bind this Court: (1) that Defendants may not call any witnesses to testify that exigent circumstances existed because "the Second Circuit concluded there was nothing in the record to support exigency at the time of entry: no screams, no sounds of violence, no active destruction of evidence, and a significant lapse of time between the alleged assault and the arrival at Plaintiff's door"; (2) that Defendants "should not be allowed to offer new or embellished versions of 'consent' that were not credited or even mentioned in the appellate opinion, or to frame the entry as if it were a straightforward consent search" because "the Second Circuit made clear that any claim of consent to enter is at best contested and insufficient to justify the warrantless intrusion"; (3) that the Second Circuit conclusively decided that "Plaintiff retained his license or privilege to be in his own home," so Defendants should be barred from arguing that they had probable cause to arrest Defendant for

burglary; and (4) that Defendants may not offer testimony explaining the delay in seeking a search warrant because they were "'waiting on a judge,'" "'coordinating with the DA,'" or "'continuously processing evidence'" because the Circuit "emphasized that the seizure of the home and the 12.5-hour delay in seeking a warrant were unexplained and that a jury could find the seizure unreasonable on that basis." *Id.* at 12-15.

Based upon his reading of the Opinion, Plaintiff argues that City Defendants should be precluded from offering evidence or arguments that contradict these "holdings." *See id.* at 13. However, Plaintiff's interpretation of the Opinion is flawed.

First and foremost, Plaintiff did not move for summary judgment throughout the course of this case. Thus, neither the Second Circuit nor this Court ever determined that Plaintiff was entitled to judgment in his favor on any of his claims. In other words, the Second Circuit did not (and could not) issue any findings in Plaintiff's favor or any findings of wrongdoing against Defendants. *See United States v. Harrell*, 268 F.3d 141, 146 (2d Cir. 2001) ("An issue is reviewable on appeal only if it was 'pressed or passed upon below'") (quoting *United States v. Williams*, 504 U.S. 36, 41 (1992)).

The impact of the Opinion is that Defendants were not entitled to summary judgment in their favor on certain claims because Plaintiff raised "triable issues of fact relating to the warrantless entry into his home, the ensuing search and prolonged seizure of the residence, and the legality of his arrest and prosecution for burglary" as well as the state law claims for "his continued detention after he posted bail twice." *Alexander*, 132 F.4th at 137. This is not a finding that Plaintiff ought to prevail on his remaining claims, nor that Defendants are precluded from offering evidence on these issues at trial. The claims that were reinstated via the Opinion were remanded for trial and a jury will resolve the factual disputes. *John Hancock Mut. Life Ins. Co. v.*

*Amerford Int'l Corp.*, 22 F.3d 458, 461 (2d Cir. 1994) ("We may not resolve disputed issues of

fact; instead, we must determine whether there are genuine issues of fact to be resolved at trial. If

there are disputed issues of fact, then we must remand for a full trial") (citing *Sayers v. Rochester

Telephone Corp.*, 7 F.3d 1091, 1094 (2d Cir. 1993)) (internal citation omitted).

Also of note, consistent with the standard of review relevant to a motion for summary

judgment, the Opinion construed the record in the light most favorable to Plaintiff, resolved all

factual disputes in Plaintiff's favor, and drew all reasonable inferences in his favor. *See

Alexander*, 132 F.4th at 146 (citation omitted). Moreover, because Plaintiff was proceeding *pro

se* at that time, the Second Circuit afforded him special solicitude, "liberally constru[ing] his

filings and read[ing] them to raise the strongest arguments that they suggest[ed]." *Id.* (citations

omitted). The deference afforded to Plaintiff as the non-movant at summary judgment and as a

*pro se* appellant are of no consequence at trial. Instead, Plaintiff will have the burden of proving

his allegations by a preponderance of the credible evidence.

For these reasons, the fifth point of Plaintiff's motion, *see* Dkt. No. 191 at 12-15, is denied.

And, to the extent Plaintiff supports other arguments with misinterpretations of the Opinion, such

arguments are rejected unless otherwise stated herein.

**C.    False Imprisonment and False Arrest Claims Against the City**

City Defendants argue that the Court should dismiss Plaintiff's state law false arrest and

false imprisonment claims against the City because the City "has no jurisdiction or responsibilities

as it relates to the [Onondaga County Justice Center (the "Justice Center")], and, therefore, cannot

be held responsible for Plaintiff's continued detention on account of any alleged clerical mistakes

by those employed by the Justice Center, *i.e.* Onondaga County Sheriff's Deputies" and because

"any issuance of bail is within the sole discretion of the Syracuse City Court judge . . . in the total

employ of the New York State Unified Court System." Dkt. No. 182-19 at 18-20 (cleaned up).

Plaintiff fails to address this issue in his opposition to City Defendants' motion. *See generally*,

Dkt. No. 201.

It appears City Defendants are correct that the Justice Center is under the control of the

Onondaga County Sheriff's Department (a department of the County of Onondaga), which is a

separate governmental entity from the City and its police department. *See, e.g.*, *V.W. by &*

*through Williams v. Conway*, 236 F. Supp. 3d 554, 566 (N.D.N.Y. 2017) ("Opened in 1995, the

Justice Center is a 671-bed correctional facility located in downtown Syracuse, New York and

operated by the Onondaga County defendants"). And, of course, Syracuse City Court judges are

employed by New York State, not the City. *See* N.Y. Const art. VI, § 1(a) ("The unified court

system for the state shall also include the . . . city . . . courts outside the city of New York, as

hereinafter provided"); N.Y. Jud. Law § 39(6) ("[A]ll justices, judges, and nonjudicial officers

and employees of the courts and court-related agencies of the unified court system set forth in

subdivision one of this section shall be employees of the state of New York"). However, the

City's potential liability for false arrest and false imprisonment arises vicariously from the alleged

conduct of its agent, Defendant Gilhooley.

"Under New York law, the elements of false imprisonment and false arrest are the same."

*Alexander*, 132 F.4th at 160-61 (citing *Hughes v. Vento*, 226 A.D.3d 753, 754-55 (2d Dep't

2024)). To prevail on these claims under New York law, "a plaintiff must show that (1) the

defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3)

the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise

privileged." *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021). As the Circuit

observed in the Opinion, the City and County did not meet their burden at summary judgment because

> there is no evidence in the record as to what time [Plaintiff] posted bail. Was it *before* his arrest for sexual assault? If so, how long before? If he posted bail well before his arrest for sexual assault, why was he held thereafter? And at whose behest was he detained? Were the driving decisions attributable to the City, the County, or both? We can imagine scenarios in which his detention after posting bail on October 29 was unproblematic. But doing so requires us to make speculative inferences.

*Alexander*, 132 F.4th at 161 (emphasis in original).

If evidence adduced at trial shows that Defendant Gilhooley, and not a County actor, was responsible for Plaintiff's confinement then the City may also be held liable. *See id.* at 157 ("Under New York law, municipalities can incur vicarious liability for common law torts their employees commit") (citing *Lepore v. Town of Greenburgh*, 120 A.D.3d 1202, 1204 (2d Dep't 2014)). At this stage, although the City maintains it was not in control of the Justice Center, the record is unclear regarding who, if anyone, was at fault for Plaintiff's arrest and confinement.

It would be more procedurally proper for City Defendants' arguments to be brought at trial after the presentation of Plaintiff's case. For example, if Plaintiff fails to prove that Defendant Gilhooley was responsible for his confinement and/or merely shows that a County or State actor was to blame, then the Court may revisit this issue as a matter of law. The same juncture would be met if the City introduces evidence at trial that an actor not under its control was solely responsible for Plaintiff's continued confinement. At this time, though, the Court cannot speculate as to what the evidence will show and, therefore, cannot rule that the City is unable to be held liable for false arrest or false imprisonment as a matter of law.

Accordingly, this aspect of the City Defendants' motion is denied without prejudice to renewal.[2]

## D.    Out-of-Court Statements

City Defendants argue that they should be permitted to introduce two categories of out-of-court statements through witness testimony: (1) statements from L.M., L.M.'s friend Erin Culhane, and Crouse Hospital medical personnel, which City Defendants claim explain Defendant Gilhooley's seizure of 1906 S. State; and (2) statements from Plaintiff's alleged co-conspirator related to Defendant Gilhooley's arrest of Plaintiff for the burglary charges. *See* Dkt. No. 182-19 at 6-12. City Defendants contend that these statements are either not hearsay because they will not be offered to prove the truth of the matter asserted, or fall within an exception to the rule against hearsay because they are statements made by a co-conspirator during and in furtherance of the conspiracy. *See id.* at 8-12. Relatedly, City Defendants also request a pre-trial ruling that Syracuse Police Department Detective Thomas Lund be permitted to testify regarding L.M.'s out-of-court statements about prostitution and the sale of cocaine at 1906 S. State for the same reasons. *See id.* at 12-13.

In response, Plaintiff argues that these statements are inadmissible hearsay, that no exceptions to the rule against hearsay apply, and that "the Second Circuit has already held that these statements cannot establish exigent circumstances, probable cause, or loss of license or privilege, and cannot justify either the warrantless entry or the arrest." Dkt. No. 201 at 5-6.

---

[2] Alternatively, City Defendants ask that if the Court does not dismiss the false arrest/false imprisonment claims against them, that the jury be instructed that "Syracuse City Court is not a department or agency of the City of Syracuse. Instead, Syracuse City Court is a part of the New York State Unified Court System. Judges within Syracuse City Court are similarly employed by New York State." Dkt. No. 182-19 at 20 (internal citations omitted). The Court will take City Defendants' proposed jury instructions under consideration, but reserves on the issue at this time.

For the reasons already discussed, the Court rejects Plaintiff's argument that the Opinion renders these statements categorically inadmissible. The Court will address each category of out-of-court statements in turn to determine whether the rule against hearsay requires preclusion.

### 1. Hearsay and Out-Of-Court Statements

"The Federal Rules of Evidence define hearsay as a declarant's out-of-court statement 'offer[ed] in evidence to prove the truth of the matter asserted in the statement.'" *United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) (quoting Fed. R. Evid. 801(c)). "Hearsay is admissible only if it falls within an enumerated exception." *Id.* (citing Fed. E. Evid. 802). For example, Federal Rule of Evidence 803(3) "'allows statements, otherwise excluded as hearsay, to be received to show the declarant's then-existing state of mind.'" *Connecticut Cmty. Bank, Nat. Ass'n v. Bank of Greenwich*, No. 3:06-CV-1293, 2008 WL 398849, *1 (D. Conn. Feb. 11, 2008) (quoting *Fun–Damental Too v. Gemmy Indus. Corp.*, 111 F.3d 993, 1003-04 (2d Cir. 1997)). Similarly, under Rule 803(1) statements that are a present sense impression are not excluded by the rule against hearsay. *See* Fed R. Evid. 803(1).

However, statements that are not hearsay do not require an enumerated exception to be admissible. In general, a statement is not hearsay if its significance "lies solely in the fact that it was made," as "no issue is raised as to the truth of anything asserted." Fed. R. Evid. 810(c) advisory committee's note. "Thus, a statement offered to show its effect on the listener is not hearsay." *Dupree*, 706 F.3d at 136 (citations omitted). Statements made by a party's co-conspirator during and in furtherance of the conspiracy are not hearsay. *See* Fed. R. Evid. 801(d)(2)(E). Additionally, statements by party opponents are not hearsay. *See* Fed. R. Evid. 801(d)(2)(A).

"Even if the evidence at issue is admissible as either non-hearsay or under one of the hearsay rule's limited exceptions, any such evidence must still be sufficiently probative under Rule 401, and not otherwise excludable under Rule 403." *Harris v. Andersen*, No. 1:17-CV-932, 2025 WL 2996698, *16 (N.D.N.Y. Oct. 24, 2025) (citing *Foley v. Town of Marlborough*, No. 3:19-CV-01481, 2023 WL 122040, *5 (D. Conn. Jan. 6, 2023)).

### 2. Statements Regarding L.M.'s Assault

On October 24, 2016, Detective Lund responded to Crouse Hospital in Syracuse, New York and spoke with L.M., Ms. Culhane, and medical personnel. *See* Dkt. No. 182-19 at 7.

According to City Defendants, Ms. Culhane told Detective Lund that she and L.M. were together the prior evening, that L.M. left with a woman named "'Samantha,'" and that L.M. returned on the morning of October 24 "'completely naked,'" appearing "'highly intoxicated'" and bleeding heavily from her groin area. *Id.* (quotation omitted).[3] Detective Lund also interviewed L.M. *See id.* L.M. purportedly made the following representations:

> she travelled with Samantha to Samantha's residence on South State Street where L.M. performed escort services; the owner of the home, Plaintiff, sold cocaine and ran prostitution out of the home; two females blocked her from leaving the residence; she was forced into the basement by the two females and another male; she was blindfolded and tied to a wooden bench in the basement; her lips were superglued together; she was stripped naked and burned with lit cigarettes; she was repeatedly injected with a substance believed to be drugs before being left in the basement for a prolonged period of time; she was later turned around on her knees and an unknown male forced anal intercourse upon her; someone forced her glued mouth open and forced her to perform oral sex; she was later cleaned up by the two females, who threatened that if she spoke to the police, she would end up like "Seven," meaning Mr. Darrell Johnson, who was found dead in Liverpool, New York in

---

[3] City Defendants have filed an affidavit signed by Detective Lund which contains a detailed account of what he recalls from the relevant conversations. *See* Dkt. No. 182-3. The Court will not reiterate every statement in the affidavit and will primarily rely on the selected portions thereof that City Defendants reference in their motion papers. *See* Dkt. No. 182-19 at 7-8.

May 2016; and the two females claimed to have been involved in his death.

*Id.* at 7-8.

Medical personnel at Crouse Hospital also informed Detective Lund that a sexual assault test kit was performed and that x-rays showed a "detachable, multi-blade shaving razor" inside of L.M.'s anal cavity, which would require surgical removal.  *Id.* at 8.

Following Detective Lund's interviews at the hospital, he went to the residence where the alleged sexual assault occurred, at approximately 5:00 P.M.  *See id.*; Dkt. No. 153 at 14. Defendant Gilhooley arrived at 1906 S. State at or around 6:50 P.M. and entered.  *See* Dkt. No. 153 at 14.  After entering the residence, the officers spoke with a woman who identified herself as Samantha Fisher-Davis and a man named Dion Alexander, Plaintiff's brother.  *See* Dkt. No. 182-19 at 8.  Ms. Fisher-Davis and Mr. Alexander "confirmed that L.M. had been at the residence the previous evening."  *Id.*  City Defendants contend that, based on this information, Defendant Gilhooley "determined that he had probable cause to seize the premises pending a search warrant application to avoid potential destruction of evidence."  *Id.*  All occupants of 1906 S. State, including Plaintiff, were removed from the residence and told they could not return.  *See id.*

City Defendants argue that the statements of L.M., Ms. Culhane, and Crouse Hospital personnel are not hearsay because they will not be offered to prove that L.M. was, in fact, sexually assaulted at 1906 S. State or that Plaintiff was criminally guilty of facilitating prostitution and selling cocaine.  *Id.* at 9.  Instead, City Defendants intend to offer this evidence to explain why Defendant Gilhooley "took certain investigative steps, including temporarily seizing the residence."  *Id.*

"If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay."  Fed. R. Evid. 801(c) advisory committee's note (citation omitted).  Indeed, out-of-court statements not offered to prove the truth of the matter asserted therein "may be admitted to establish, for instance, the reasons that the police took certain actions during a criminal investigation."  *Brown v. Donnelly*, 371 F. Supp. 2d 332, 344 (W.D.N.Y. 2005) (collecting cases).

Thus, if City Defendants seek to introduce statements from L.M., Ms. Culhane, and Crouse Hospital personnel for the limited non-hearsay purpose of their effect on Defendant Gilhooley and other officers, such statements are admissible.

Plaintiff's arguments to the contrary are unconvincing.  First, the statements are not hearsay if Defendants do not offer them for their truth.  Second, Plaintiff argues that "[c]ourts routinely reject the introduction of hearsay where the effect would be to reintroduce dismissed allegations or to justify police conduct already found unsupported."  Dkt. No. 201 at 6.  In support of this argument, Plaintiff cites *Schnitter v. City of Rochester*, 931 F. Supp. 2d 469 (W.D.N.Y. 2013), *aff'd*, 556 Fed. Appx. 5 (2d Cir. 2014), but provides no specific page citation or explanatory parenthetical.  The Court has a hard time discerning exactly what Plaintiff means by "reintroduce dismissed allegations" and "justify police conduct already found unsupported" in this context.  Regardless, the word hearsay does not appear once in *Schnitter*, and the case does not support any conceivable argument that the statements at issue here are inadmissible on hearsay grounds.  Third, Plaintiff's argument that admissions of these statements would be "unfair" because he never had the opportunity to cross-examine or depose the declarants misses the point. Dkt. No. 201 at 6.  If the statements are not offered for their truth, the confrontation issues inherent to out-of-court statements ceases to exist; this reasoning is precisely why statements

16

offered merely to show their effect on the listener are not considered hearsay. City Defendants seek to introduce the statements of L.M., Ms. Culhane, and Crouse Hospital personnel solely for purpose of establishing why certain police action was taken. The significance these statements lie solely in the fact that they were made. *See* Fed. R. Evid. 801(c) advisory committee's note.

Finally, the Court finds that this evidence is relevant and its probative value is not substantially outweighed by its potential for unfair prejudice. As for relevance, an issue at trial will be whether exigent circumstances permitted Defendant Gilhooley to seize 1906 S. State without a warrant. Relevant to the analysis of the presence of exigent circumstances is, among other things, "the gravity or violent nature of the offense" and "a clear showing of probable cause." *Harris v. O'Hare*, 770 F.3d 224, 234 (2d Cir. 2014). The information known to Defendant Gilhooley at the time he entered 1906 S. State is extremely relevant to the triable issues. As for prejudice, the statements discussed above do not implicate Plaintiff directly in the assault on L.M. In her statements given to police *before* the search and seizure of 1906 S. State, L.M. did not identify Plaintiff as one of her attackers—this accusation was contained in her grand jury testimony which occurred after the fact. *See* Dkt. No. 200-10 at 15. "City Defendants have no intention of introducing any of L.M.'s statements beyond those given to officers prior to [Defendant] Gilhooley's seizure" of the residence. *Id.* As such, the scope of the evidence sought to be introduced is limited, its probative value is very high, and there is minimal risk of undue prejudice to Plaintiff.

Accordingly, this portion of City Defendants' motion is granted, and City Defendants will be permitted to offer Detective Lund's testimony regarding statements made by L.M., Ms. Culhane, and Crouse Hospital personnel, so long as such statements are not offered for their truth.

### 3. Statements Related to Burglary Arrest

City Defendants intend to offer certain statements made by Plaintiff's cousin, Tereia Duff, to Officer Travis Holmes pursuant to Federal Rule of Evidence 801(d)(2)(e).  *See* Dkt. No. 182-19 at 10-12.  Ms. Duff was purportedly discovered by Officer Holmes inside 1906 S. State after the residence had been seized.  *See id.* at 10.  According to City Defendants, Ms. Duff told Officer Holmes that she entered the residence "at Plaintiff's request to retrieve his phone" and that Plaintiff had given her a key to his room in order to do so.  *Id.* at 10-11.  Ms. Duff was arrested and charged with tampering with physical evidence and, based on Ms. Duff's statements, Plaintiff was arrested for burglary, conspiracy, criminal facilitation, and criminal solicitation (collectively, the "Burglary Charges").  *Id.* at 11.

Statements made a party's co-conspirator during and in furtherance of the conspiracy are not hearsay.  *See* Fed. R. Evid. 801(d)(2)(E).  This is true even if the statement is made by a non-party co-conspirator.  *See Alexander v. Hanson*, 566 F. Supp. 3d 162, 167 (N.D.N.Y. 2021) ("'[E]vidence regarding non-party co-conspirators is admissible against a party co-conspirator'") (quoting *Davidson v. Scully*, 148 F. Supp. 2d 249, 253 (S.D.N.Y. 2001)).  "To admit an out-of-court declaration under this rule, the district court must find by a preponderance of the evidence '(a) that there was a conspiracy, (b) that its members included the declarant and the party against whom the statement is offered, and (c) that the statement was made during the course of and in furtherance of the conspiracy.'"  *United States v. Farhane*, 634 F.3d 127, 161 (2d Cir. 2011) (quotation omitted).

"The statement must be considered but does not by itself establish . . . the existence of the conspiracy or participation in it."  Fed. R. Evid. 801(d)(2).  "This exception to the rule against hearsay applies in both criminal and civil cases and applies to statements made 'during and in furtherance of' conspiracies to commit criminal or tortious acts."  *Funk v. Belneftekhim*, No. 14-

CV-0376, 2018 WL 11169575, *4 (E.D.N.Y. Nov. 30, 2018) (citing *United States v. Russo*, 302 F.3d 37, 44-45 (2d Cir. 2002)).

On the present record the Court cannot find that Ms. Duff's statements to Officer Holmes were made "during and in furtherance of" the conspiracy because they were made to law enforcement during/after Ms. Duff's arrest. Indeed, statements made by a co-conspirator after arrest are often found not be made in furtherance of the conspiracy. *See, e.g.*, *United States v. Carper*, 942 F.2d 1298, 1301 (8th Cir. 1991) ("After Knutson's arrest, he told Officer Martin he got his methamphetamine from a 'source.' Officer Martin repeated this statement in his testimony. Since Knutson made the statement after his arrest, it could not have been made in furtherance of the conspiracy") (internal citation omitted); *United States v. Kindle*, 925 F.2d 272, 277-78 (8th Cir. 1991) ("The statements made to the law enforcement officer, however, were apparently made after the coconspirator's arrest and were not in furtherance of the conspiracy").

Accordingly, this portion of City Defendants' motion is denied at this time. However, if City Defendants elicit testimony or offer evidence that could establish that Ms. Duff's statements were made during and in furtherance of the conspiracy, the Court will revisit this issue.[4]

### 4. *Testimony Regarding Prostitution and Sale of Cocaine at 1906 S. State*

City Defendants contend that Detective Lund should be permitted to testify regarding L.M.'s out-of-court statements regarding prostitution and the sale of cocaine at 1906 S. State and that, if Plaintiff or any occupants of 1906 S. State testify at trial, City Defendants should be able

---

[4] The Court notes that Defendants are not precluded from offering Ms. Duff's statements on other proper evidentiary grounds. *See, e.g.*, *United States v. Kusek*, 647 F. Supp. 1150, 1154 (S.D.N.Y. 1986) ("On the other hand, Morgan's May 8, 1984 statement is not, on its face, in furtherance of the conspiracy. However, a separate grounds is available to support the admissibility of this statement").

to question those witnesses about the sale of cocaine and prostitution.  *See* Dkt. No. 182-19 at 12-13.

For the same reasons that Detective Lund may testify regarding L.M.'s statements related to the sexual assault, he may also testify regarding her statements about prostitution and the sale of cocaine at 1906 S. State.  Of course, City Defendants may not introduce these out-of-court statements for their truth.

The parties' related arguments regarding whether testimony about the sale of cocaine and prostitution is admissible as prior bad act evidence will be addressed in the following section.

E.      **Character Evidence and Prior Convictions**

Plaintiff contends that any evidence related to whether Plaintiff was involved in drugs, prostitution, violence, sexual assault, or any other alleged "bad character" activity should be precluded under Rules 401, 402, 403, and 404(b) of the Federal Rules of Evidence because it is irrelevant and unduly prejudicial as it would invite the jury to punish him for acts that are not part of the present case.  *See* Dkt. No. 191 at 15-16.  In a separate but related section of his motion, Plaintiff also argues that his prior conviction for robbery, or any other prior convictions, are not admissible under Rule 609 because they are irrelevant, remote, and prejudicial.  *See id* at 3-5.

In response, City Defendants note that Plaintiff has not clearly identified the specific purported convictions, arrests, or prior bad acts that he seeks preclusion of, besides a vague reference to a "decades-old robbery conviction."  Dkt. No. 200-10 at 9-10.  Additionally, in their motion, City Defendants contend that Detective Lund should be permitted to testify regarding L.M.'s out-of-court statements regarding prostitution and the sale of cocaine at 1906 S. State and that, if Plaintiff or any occupants of 1906 S. State testify at trial, City Defendants should be able

to question those witnesses on the sale of cocaine and prostitution at 1906 S. State. *See* Dkt. No. 182-19 at 12-13.

As for the Rule 609 arguments, City Defendants state they have no intention of eliciting testimony or introducing evidence of Plaintiff's prior convictions unless he opens the door. *See* Dkt. No. 200-10 at 10. Thus, this aspect of Plaintiff's motion is denied as moot.

As for prior bad acts, City Defendants specify that, unless Plaintiff opens the door, their motion "addressed the only potentially bad act evidence they intend to introduce, namely, testimony and evidence concerning prostitution and the sale of cocaine at 1906 S[.] State." *Id.* Thus, for purposes of the present motions, the Court will limit its analysis to these alleged bad acts.

Rule 404(b) prohibits the admission of evidence of "other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therein." Fed. R. Evid. 404(b)(1). Thus, Rule 404(b) "prohibits the introduction of character evidence to show that an individual has a certain predisposition, and acted consistently with such predisposition during the event in question." *Starmel v. Tompkin*, 634 F. Supp. 3d 41, 46 (N.D.N.Y. 2022) (citation omitted). Evidence of prior bad acts may be allowed, however, "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). The decision whether to admit evidence under Rule 404(b) turns on "whether the danger of undue prejudice outweighs the probative value of the evidence in view of the availability of other means of proof and other factors appropriate for making decisions of this kind under Rule 403." *Huddleston v. United States*, 485 U.S. 681, 688 (1988) (quotation and internal quotation marks omitted). Rule 403 vests the district court with

broad discretion to exclude evidence where the probative value is substantially outweighed by the possibility of jury prejudice or confusion.  *See* Fed. R. Evid. 403.

"The Second Circuit evaluates Rule 404(b) evidence under an 'inclusionary approach' and allows evidence 'for any purpose other than to show a defendant's criminal propensity.'"  *United States v. Garcia*, 291 F.3d 127, 136 (2d Cir. 2002) (quoting *United States v. Pitre*, 960 F.2d 1112, 1118 (2d Cir. 1992)).  The Supreme Court and Second Circuit have created a four-part test to determine admissibility under Rule 404(b): (1) whether the prior act evidence was offered for a proper purpose; (2) whether the evidence was relevant to a disputed issue; (3) whether the probative value of the prior act evidence is substantially outweighed by its potential for unfair prejudice; and (4) whether the district court administered an appropriate limiting instruction.  *Id.* (citing *Huddleston*, 485 U.S. at 691-92).

City Defendants' primary argument appears to be that testimony regarding prostitution and the sale of cocaine at 1906 S. State is relevant to its defense against Plaintiff's Fourth Amendment claims.  *See* Dkt. No. 182-19 at 12.  City Defendants argue that this evidence is relevant because it establishes criminal activity at the residence, beyond the sexual assault of L.M., which is relevant to demonstrate Defendant Gilhooley's probable cause to enter and temporarily seize 1906 S. State.  *See id.*  Additionally, City Defendants contend that evidence of Plaintiff's criminal activity is probative of his credibility.  *See id.* (citing Fed. R. Evid. 608).[5]

"'The core premise underlying the Fourth Amendment is that warrantless searches of a home are presumptively unreasonable.'"  *O'Hare*, 770 F.3d at 231 (quoting *United States v. Simmons*, 661 F.3d 151, 156–57 (2d Cir. 2011)).  "'[P]olice officers need either a warrant or

---

[5]  The Court gleans from City Defendants' trial brief that they intend to argue that exigent circumstances necessitated Defendant Gilhooley's entry into and seizure of 1906 S. State.  *See* Dkt. No. 183 at 7.

probable cause plus exigent circumstances in order to make a lawful entry into a home.'" *Id.* at

231-32 (quoting *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002)).

The Second Circuit employs "an objective test in deciding whether a claimed exigency

justifies a warrantless intrusion on Fourth Amendment interests." *Id.* at 234.  "'The objective test

'turns on [an] . . . examination of the totality of circumstances confronting law enforcement agents

in the particular case.'" *Id.* (quotation omitted).  Courts often reference six factors when

determining whether exigent circumstances justify a warrantless intrusion of Fourth Amendment

interests:

> (1) the gravity or violent nature of the offense with which the
> suspect is to be charged; (2) whether the suspect is reasonably
> believed to be armed; (3) a clear showing of probable cause . . . to
> believe that the suspect committed the crime; (4) strong reason to
> believe that the suspect is in the premises being entered; (5) a
> likelihood that the suspect will escape if not swiftly apprehended;
> and (6) the peaceful circumstances of the entry.

*Id.* (quotation omitted).  In recovery of property scenarios, the Circuit has "considered an

additional factor, namely whether quick action is necessary to prevent the destruction of

evidence." *Id.* at 234-35 (quotation, citation, and internal quotation marks omitted).  "'The core

question is whether the facts, as they *appeared at the moment of entry,* would lead a reasonable,

experienced officer, to believe that there was an urgent need to render aid or take action.'" *Id.* at

235 (quotation omitted) (emphasis in original).

Although this evidence is conceivably relevant to the Fourth Amendment claims, it is

unclear how it could be introduced as prior bad acts evidence under Rule 404(b).  City Defendants

offer no argument as to how testimony that prostitution and cocaine sales took place at 1906 S.

State is admissible to prove Plaintiff's motive, opportunity, intent, preparation, plan, knowledge,

identity, absence of mistake, or lack of accident.  *See* Dkt. No. 182-19 at 12 (stating the general

rule without application to the facts of this case). Similarly, City Defendants present no argument as to how such testimony is probative of Plaintiff's character for untruthfulness, besides a bare citation to Federal Rule of Evidence 608. *See id.* at 12-13. Without more the Court cannot rule pre-trial. Thus, the Court reserves on City Defendants' motion to the extent they seek to admit evidence of prostitution or the sale of cocaine at 1906 S. State under Rules 404 and 608.

**F.    Dismissed Claims**

Plaintiff and City Defendants each move to preclude the other from introducing evidence regarding, or arguing about, the dismissed causes of action. *See* Dkt. No. 182-19 at 17-18; Dkt. No. 191 at 5-6.

As an overarching matter, the Court will not permit Plaintiff to re-try issues before a jury that were dismissed during the pendency of this litigation. Pursuant to the long-standing "law of the case" doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983), *decision supplemented*, 466 U.S. 144 (1984). Thus, where claims have been dismissed, "it is generally appropriate to preclude testimony or evidence regarding those same previously dismissed claims during a jury trial." *Hannah v. Wal-Mart Stores, Inc.*, No. 3:12-CV-01361, 2017 WL 690179, *2 (D. Conn. Feb. 21, 2017), *aff'd*, 803 Fed. Appx. 417 (2d Cir. 2020).

As the Court is generally bound by its own prior rulings, evidence that solely relates to dismissed causes of action would be irrelevant and unnecessary, and any potential probative value is substantially outweighed by the risk of unfair prejudice, confusion, and delay. *See* Fed. R. Evid. 403. Thus, to the extent that Defendants seek to preclude Plaintiff from re-litigating issues that the Court has already decided, Defendants' motion is granted.

The relief sought by Plaintiff is more difficult to discern. *See* Dkt. No. 191 at 5-6. To the extent Plaintiff's motion can be read to argue that the Opinion "affirmed" dismissal of state criminal charges related to sexual assault, narcotics, prostitution, and kidnapping, the Court finds Plaintiff's motion without merit. *See id.* The validity of any state criminal charges brought against Plaintiff for the events in question was never before this Court or the Second Circuit. As discussed, the Circuit affirmed dismissal of certain civil causes of action brought by Plaintiff and remanded certain other civil claims for trial. *See, generally*, Dkt. No. 153.

To the extent Plaintiff seeks preclusion of *any* evidence related to sexual assault, narcotics, prostitution, and kidnapping, the Court finds such broad preclusion unwarranted. L.M.'s statements concerning her sexual assault, prostitution, and the sale of cocaine at 1906 S. State are highly relevant to City Defendants' exigent circumstances arguments. Indeed, courts looking at the exigence of circumstances often consider whether "quick action is necessary to prevent the destruction of evidence." *United States v. Moreno*, 701 F.3d 64, 73 (2d Cir. 2012) (quoting *United States v. Brown*, 52 F.3d 415, 421 (2d Cir. 1995)) (internal quotation marks omitted). As such, Plaintiff's request for a sweeping preclusion of all such evidence, *see* Dkt. No. 191 at 5-7, is denied.

## G.    Photographs of L.M.'s Injuries and Other Depictions of Her Assault

Plaintiff contends that the Court must preclude "any testimony, deposition reading, or documentary evidence, including photos, suggesting that L.M. was sexually assaulted in Plaintiff's home, including any portion of L.M.'s own deposition or grand jury testimony, and any hospital photographs or records offered to imply that the home was the scene of a rape." Dkt. No. 191 at 8-10. Besides his irrelevant argument that the Second Circuit "recognized [that] the record contains no evidence that any assault took place inside Plaintiff's residence," Plaintiff argues that

evidence related to L.M.'s sexual assault would be unduly prejudicial because he cannot confront L.M. about her allegations and graphic photographs depicting her injuries would "evoke sympathy or horror" from the jury.  *Id.*

The majority of these arguments can be disposed of in short order.  First, as discussed, Detective Lund will be permitted to testify regarding the statements made to him by L.M. Second, as City Defendants point out, L.M. passed away mere months after Plaintiff commenced this action, so she was never deposed.  *See* Dkt. No. 200 at 15.  The Court denies Plaintiff's request to preclude non-existent deposition testimony.  Third, although L.M. purportedly identified Plaintiff as one of her attackers during her grand jury testimony, City Defendants do not intend to introduce any of her statements besides those given to officers prior to Defendant Gilhooley's seizure of 1906 S. State.  *See id.*  Accordingly, because City Defendants do not intend to introduce L.M.'s grand jury testimony unless Plaintiff opens the door, this portion of Plaintiff's motion is denied as moot.

On the other hand, the Court will grant Plaintiff's motion as to preclusion of the photographs.  City Defendants argue that "the brutality of L.M.'s sexual assault and her resulting injuries cannot be adequately explained—they must be seen to be properly understood."  *Id.* Because "the gravity or violent nature of the offense" is a factor that courts consider when analyzing exigent circumstances, *Alexander*, 132 F.4th at 148 n.12 (quotation omitted), the Court has held herein that City Defendants will be permitted to elicit testimony which describes the violent nature of the offenses suffered by L.M.  As this information will already be before the jury via testimony, graphic photographs depicting the gruesome injuries L.M. suffered are of limited additional probative value.  Moreover, any probative value the photographs have is substantially outweighed by the dangers of, among other things, unfair prejudice and confusion of the issues.

*See* Fed. R. Evid. 403.  Introducing these photographs threatens to inflame the emotions of the jury, invites the jurors to apply improper motives in their deliberations, and distracts from the constitutional claims that are the subject of the case to be tried.  Accordingly, after balancing the dangers contemplated by Rule 403, the Court finds that Defendants may not introduce photographs depicting L.M.'s injuries.

**H.    Evidence Related to Blood in Plaintiff's Vehicles**

Plaintiff's causes of action directly related to the search and seizure of his vehicles have been dismissed.  *See* Dkt. No. 153 at 45-46 (affirming dismissal of Fourth Amendment claim related to the search and seizure of Plaintiff's vehicles).  Plaintiff argues that "[a]ny testimony, report, photograph, or argument relating to the flashlight search of Plaintiff's vehicles or alleged 'blood in the car' must be excluded because those claims were dismissed, are irrelevant to the surviving issues, and pose an extreme danger of unfair prejudice."  Dkt. No. 191 at 10.  Although he believes any evidence related to the search of his vehicles is inadmissible, Plaintiff maintains that he should be able to seek damages for having to "recoup his vehicles" after they were seized. *Id.* at 12.

City Defendants contend that because the Second Circuit reinstated a cause of action related to the prolonged seizure of the residence, "any investigative steps [Defendant] Gilhooley took that delayed obtaining and executing the search warrant, including the search and seizure of Plaintiff's vehicles, are relevant to justify the delay."  Dkt. No. 200-10 at 15-17.  As to Plaintiff's later argument, City Defendants respond that: (1) Plaintiff cannot "preclude the City Defendants from testifying to their search and seizure of his vehicles yet be permitted to testify to damages"; (2) Plaintiff does not have any remaining causes of action related to the search and seizure of his

27

vehicles; and (3) Plaintiff brought a small claims court action related to the costs he incurred related to the seizure of his vehicles, so he had a full and fair opportunity to litigate the matter and should be precluded here from asserting damages arising from the same conduct. *See id.* at 16-17.

The Court agrees with City Defendants. Investigative steps that Defendant Gilhooley may have taken during the course of his investigation that delayed his application for a search warrant are relevant to whether City Defendants violated Plaintiff's Fourth Amendment rights during their prolonged seizure of the residence. Indeed, in Defendant Gilhooley's affidavit dated September 27, 2021, he states that after he searched the residence, he looked inside two vehicles parked on the property and observed what he believed to be blood on the seats. *See* Dkt. No. 182-4 at ¶¶ 18-19. Defendant Gilhooley thought this potential blood was relevant because L.M. presented at the hospital with bleeding from her groin and buttocks area and Defendant Gilhooley was purportedly concerned that bodily fluids or fingerprints could be destroyed or contaminated if left at the scene. *See id.* at ¶ 21. As such, Defendant Gilhooley claims he directed that the vehicles be towed before he returned to the Criminal Investigations Bureau offices to draft search warrant applications. *See id.* at ¶¶ 22-24. Defendant Gilhooley's search warrant application explicitly sought permission to search the vehicles at issue and such warrants were granted. *See* Dkt. No. 200-2 at 3-6. With all of this considered, the search and seizure of Plaintiff's vehicles is relevant to the timeline of when Defendant Gilhooley sought a search warrant—a contested and important topic of this trial. Thus, the Court finds this evidence is relevant under Rule 401.

Balancing the probative value of this evidence with its potential for prejudice, the Court also finds that Rule 403 does not bar its admission. "Rule 403 is for weeding out 'unfair' prejudice—prejudice not related to the actual merits of the case in suit." *U.S. Bank Nat. Ass'n v.*

*PHL Variable Life Ins. Co.*, 112 F. Supp. 3d 122, 155 (S.D.N.Y. 2015).  As discussed, Defendants will be able to present testimony that L.M. claimed 1906 S. State was the location where she suffered heinous sexual assault and torture.  Plaintiff is concerned that "[a]llowing the jury to hear that officers claimed to see 'blood' in a car creates a substantial risk that the jury will conclude Plaintiff must have been involved in a violent offense, which would impermissibly distract from the actual questions at trial[.]"  Dkt. No. 191 at 11.  However, testimony that officers believed that vehicles at the residence contained blood is no more disturbing than the crimes L.M. claimed she suffered at 1906 S. State.  *See Carroll v. Trump*, 124 F.4th 140, 170 (2d Cir. 2024) (finding district court did not abuse its discretion in admitting testimony that described acts that were "'no more sensational or disturbing'" than the acts alleged by the plaintiff) (quoting *United States v. Curley*, 639 F.3d 50, 59 (2d Cir. 2011)); *Ejchorszt v. Daigle*, No. 3:02-CV-01350, 2009 WL 1687930, *3 (D. Conn. June 16, 2009) (finding probative value of testimony regarding certain events not substantially outweighed by any potential unfair prejudice where subject of testimony was not not more disturbing than the facts underlying the plaintiff's claims).

For these reasons, Plaintiff's request that any evidence related to the search of his vehicles or "blood in the cars" be precluded pursuant to Rules 401 and 403 is denied.

Additionally, Plaintiff is precluded from presenting evidence related to the costs associated with "having to recoup his vehicles."  Dkt. No. 191 at 12.  Plaintiff's claim arising out of the search and seizure of his vehicles was dismissed, therefore, he may not recover damages related solely to such claim.[6]

---

[6]  The Court has also considered City Defendants' argument that Plaintiff's pursuit of a small claims judgment for the same damages precludes him from seeking those damages before this Court.  *See* Dkt. No. 200-10 at 17 (citing *Simmons v. Trans Express Inc.*, 37 N.Y.3d 107, 115 (2021)).  In *Simmons* the New York State Court of Appeals answered a question certified by the Second Circuit and held that "a small claims judgment may preclude a subsequent claim between

**I.    Qualified Immunity**

Plaintiff essentially argues that City Defendants should be precluded from asserting

qualified immunity as a defense merely because the Second Circuit did not find Defendants were

entitled to summary judgment on the basis of qualified immunity.  *See* Dkt. No. 191 at 16-18.

As City Defendants correctly point out, *see* Dkt. No. 200-10 at 21, the Circuit did not

conclusively "reject" City Defendants' "probable-cause theory for the arrest" and did not find that

Defendant Gilhooley acted with "malice," Dkt. No. 191 at 17.  The Second Circuit merely found

triable issues of fact precluded summary judgment.  *See Alexander*, 132 F.4th at 157.  Therefore,

the Court rejects Plaintiff's argument that the Opinion "resolved" the question of whether

Defendants can assert qualified immunity.

"Application of qualified immunity is a mixed question of fact and law."  *Southerland v.

Woo*, 44 F. Supp. 3d 264, 272 (E.D.N.Y. 2014), *aff'd*, 661 Fed. Appx. 94 (2d Cir. 2016) (citing

*Kerman v. City of New York*, 374 F.3d 93, 109 (2d Cir. 2004)).  "The jury must decide any factual

questions in dispute, . . . and 'the court then may make the ultimate legal determination of whether

qualified immunity attaches *on those facts*.'"  *Id.* (quoting *Kerman*, 374 F.3d at 109) (emphasis in

original).

"Qualified immunity is an affirmative defense that may be waived if it is not timely

raised."  *Colon v. City of New York*, No. 16-CV-4540, 2023 WL 6497650, *4 (S.D.N.Y. Oct. 5,

2023) (citing *McCardle v. Haddad*, 131 F.3d 43, 51 (2d Cir. 1997); *Harris v. Miller*, 818 F.3d 49,

---

the same adversaries arising out of the same transaction or series of transactions as the prior
action."  *Simmons*, 37 N.Y.3d at 115.  However, *Simmons* involved an interpretation of sections of
the New York City Civil Court Act and is, therefore, not directly applicable.  This is not to say
that Plaintiff's pursuit of damages through a small claims court action has no preclusive effect, but
the Court need not reach this conclusion because dismissal of Plaintiff's claims related to the
search and seizure of his vehicles is sufficient grounds to preclude evidence of damages arising
therefrom.

63 (2d Cir. 2016)). However, there is no indication that Defendants waived qualified immunity. The record clearly shows that City Defendants asserted qualified immunity as an affirmative defense in their pleadings and have raised qualified immunity throughout dispositive motion practice before this Court. *See* Dkt. No. 4 at ¶ 101; Dkt. No. 52 at ¶ 99; Dkt. No. 119-48 at 28-29.

Plaintiff's motion is denied to the extent he seeks to preclude Defendants from asserting qualified immunity.

## J.    Trial Testimony of Undisclosed or Irrelevant Witnesses

### 1.  *City Defendant Witnesses*

City Defendants seek to call Captain David Metz as a fact witness at trial. *See* Dkt. No. 182-19 at 13-17. Captain Metz, who was a Sergeant during the relevant time period, responded to 1906 S. State with Defendant Gilhooley. *See id.* at 13. Although City Defendants failed to name Captain Metz on their initial Rule 26 disclosures, they claim to "have a good faith belief" that he was identified on City Defendants' second supplemental mandatory disclosures. *Id.* City Defendants cannot, however, "locate a signed copy of the disclosure in their files." *Id.* Plaintiff argues that City Defendants have not met their burden of demonstrating that the failure to disclose Captain Metz was substantially justified and that this non-disclosure is prejudicial because Plaintiff had no opportunity to depose him or prepare for his trial testimony. *See* Dkt. No. 201 at 9-10.

Rule 26 enumerates certain categories of information that litigants must provide "without awaiting a discovery order," at or within fourteen days of the parties' Rule 26(f) conference. Fed. R. Civ. P. 26(a), (c). Under Rule 26(a)(1)(A)(i), a party must provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information—

along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."

These disclosures "(like all other initial disclosures) must be made 'based on the information then reasonably available to [the disclosing party],' and is not excused because the disclosing party has not fully investigated the case." *U.S. Bank Nat. Ass'n v. PHL Variable Ins. Co.*, No. 12 CIV. 6811, 2013 WL 5495542, *2 (S.D.N.Y. Oct. 3, 2013) (quoting Fed. R. Civ. P. 26(a)(1)(E)).  Additionally, "disclosures are to be timely supplemented by the disclosing party if it learns that they are incorrect or incomplete." *Id.* (citing Fed. R. Civ. P. 26(e)(1)(A)).

"Under Rule 37(c), if a party fails to provide the information required by Rule 26(a), 'the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.'" *Glob. Weather Prods. LLC v. Reuters News & Media LLC*, No. 24-CV-507, 2025 WL 2652860, *4 (S.D.N.Y. Sept. 16, 2025) (quoting Fed. R. Civ. P. 37(c)(1)).  "The purpose of the rule is 'to prevent the practice of "sandbagging" an adversary with new evidence,' and 'to alert an opposing party of the need to take discovery of the named witness[.]'" *Orsaio v. N.Y.S. Dep't of Corr. & Cmty. Supervision*, No. 6:17-CV-00685, 2022 WL 351827, *11 (N.D.N.Y. Jan. 14, 2022), *aff'd*, No. 22-596, 2023 WL 3410554 (2d Cir. May 12, 2023) (quoting *Johnson Elec. N. Am. v. Mabuchi Motor Am. Corp.*, 77 F. Supp. 2d 446, 458 (S.D.N.Y. 1999); *Pal v. N.Y. Univ.*, No. 06-CV-5892, 2008 WL 2627614, *4 (S.D.N.Y. June 30, 2008)) (internal citations omitted).

When considering whether to exclude evidence pursuant to Rule 37, courts in this Circuit must consider (1) the party's explanation for the failure to comply with the [disclosure requirement]; (2) the importance of the testimony of the precluded witness[es]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4)

the possibility of a continuance." *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006) (quotation and internal quotation marks omitted); *see Fang v. Dofar*, No. 9:15-CV-1251, 2019 WL 315036, *3 (N.D.N.Y. Jan. 23, 2019).

There is no doubt that Captain Metz's testimony is important to the narrative of City Defendants' case, as he "is one of the only—if not the only—other witnesses who was present when [Defendant] Gilhooley entered 1906 S. State and recalls entering the premises over nine years later." Dkt. No. 182-19 at 14 (cleaned up). City Defendants claim that Captain Metz's testimony is, therefore, critical to contradict any assertions by Plaintiff's witnesses that entry into the residence was by force rather than consent. *See id.*

However, City Defendants' explanation for this purported non-disclosure is unsatisfactory. City Defendants have provided copies of their initial Rule 26 disclosure, supplemental Rule 26 disclosure, and second supplemental Rule 26 disclosure. *See* Dkt. Nos. 182-9, 182-10, 182-11. However, the second supplemental disclosure is the first time Captain Metz is identified as a potential witness, and the copy provided by City Defendants is not signed. *See* Dkt. No. 182-11 at 2-3. Therefore, the Court cannot be assured that this disclosure was ever served on Plaintiff. And, although he does not directly claim the second supplemental disclosure was never served on him, Plaintiff maintains that Captain Metz was not properly disclosed. *See* Dkt. No. 201 at 10. Regardless of whether City Defendants acted in good faith, "[e]vidence may be precluded pursuant to Rule 37(c) without the need for a showing of bad faith." *Est. of Jaquez v. Flores*, No. 10-CV-2881, 2016 WL 1060841, *7 (S.D.N.Y. Mar. 17, 2016) (citation omitted).

Captain Metz appears to have been mentioned in other discovery material, including being mentioned by name during Defendant Gilhooley's deposition, *see* Dkt. No. 182-19 at 14-16, but "knowledge of the existence of a witness does not satisfy . . . [the] disclosure obligation." *Fang*,

2019 WL 315036, at *3 (citing *Schiller v. City of New York*, 2008 WL 4525341, *4 (S.D.N.Y. 2008)). Moreover, it is City Defendants' burden to demonstrate lack of prejudice, not Plaintiff's burden to show how or if he will be prejudiced. *See Castro v. City of New York*, No. 06-CV-2253, 2009 WL 2461144, *6 (E.D.N.Y. Aug. 10, 2009) ("[I]t is [the non-disclosing party's] burden to demonstrate lack of prejudice, not [the other party's] burden to demonstrate that they are prejudiced") (citations omitted).

And, as for the fourth factor, a continuance has not been requested, nor would one be within the realm of reasonable possibilities. *See id.* (finding a continuance not to be a reasonable possibility when trial was scheduled to commence approximately three years after action was commenced). Trial is set to commence nearly nine years after the commencement of this action.

Despite the "automatic" nature of Rule 37(c)(1), "the imposition of sanctions under the rule is a matter within the trial court's discretion." *Am. Stock Exch., LLC v. Mopex, Inc.*, 215 F.R.D. 87, 93 (S.D.N.Y. 2002) (citing *Jockey Int'l, Inc. v. M/V "Leverkusen Express"*, 217 F. Supp. 2d 447, 452 (S.D.N.Y. 2002)). And the Court is aware that "[p]reclusion of evidence is generally a disfavored action." *Id.* (citation omitted). Further, the preclusion of evidence not disclosed in discovery is "a drastic remedy and will apply only in situations where the failure to disclose represents . . . flagrant bad faith and callous disregard of the rules." *Johnson Elec. N. Am., Inc. v. Mabuchi Motor Am. Corp.*, 77 F. Supp. 2d 446, 458 (S.D.N.Y. 1999) (citations omitted).

Balancing all of the relevant factors and taking careful consideration of the parties' arguments, the Court is not inclined to out-right preclude Captain Metz from testifying at trial. However, there is significant potential prejudice that would stem from permitting testimony from a witness never deposed by Plaintiff. Thus, the Court orders that, if City Defendants intend to call

Captain Metz at trial, City Defendants must make him available for a deposition by Plaintiff *at a time convenient for Plaintiff's counsel*.  The Court encourages Plaintiff's counsel to make every effort to provide a convenient time, but the burden is on City Defendants to find a way to make Captain Metz available for a deposition before trial commences.  City Defendants are responsible for the costs of the deposition.

### 2. *Plaintiff's Witnesses*

City Defendants also argue that Plaintiff's witness list identifies individuals that were not properly disclosed or are irrelevant to the remaining causes of action.  *See* Dkt. No. 200-10 at 23. In the time since City Defendants' *in limine* papers were filed, Plaintiff has filed an amended witness list that is significantly shorter than his initial witness list.  *See* Dkt. No. 212.  Plaintiff's amended witness list now contains only six potential witnesses: (1) Plaintiff; (2) James Jones; (3) Lauren Becker; (4) Theresa Smith; (5) Stefan Harris; and (6) "Bail Bondsman."  *Id.*

Therefore, to the extent City Defendants object to the testimony of witnesses that are not contained on Plaintiff's amended witness list, City Defendants' motion is denied as moot.  The Court will, however, address City Defendants' arguments that pertain to witnesses that still may be called at trial.

City Defendants contend that testimony from Lauren Becker is irrelevant because she was not present at 1906 S. State when Defendant Gilhooley entered and seized the residence.  *See* Dkt. No. 200-10 at 24.  Plaintiff's witness list states that Ms. Becker may testify regarding:

> her personal observations of L.M. and her interactions with L.M. on and around the date of the alleged assault underlying the police investigation.  She will testify about L.M.'s demeanor, physical condition, statements, and conduct, including observations that were inconsistent with the allegations reported to police.  Ms. Becker will also testify regarding her communications with law enforcement, including the information she provided and how her

> statements were documented or interpreted by SPD detectives.  Her
> testimony will corroborate inconsistencies in the foundational
> narrative relied upon by the police and will support Plaintiff's
> position that SPD lacked a credible factual basis for the allegations
> that led to the warrantless entry, search, and arrest.

Dkt. No. 212 at 2.

Pursuant to Rule 401 "[e]vidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  Under this lenient standard, Ms. Becker's testimony may be somewhat relevant to the issues to be tried.  However, it is unclear from Plaintiff's explanation of Ms. Becker's testimony topics when she observed L.M., when she spoke with law enforcement, or whether she was present at the residence when it was being seized.  If there were a malicious prosecution claim related to Plaintiff's arrest for sexual assault charges, Ms. Becker's proposed testimony might be relevant to the existence or non-existence of probable cause and whether such probable cause dissipated.  But the relevance of Ms. Becker's testimony as to the causes of action that remain for trial appears to be tenuous.

After careful consideration, the Court finds that it cannot make a fully informed determination as to whether Ms. Becker's testimony is relevant at this time.  Accordingly, City Defendants' motion is reserved on as to categorical preclusion of Ms. Becker's testimony on relevance grounds.[7]

---

[7] In opposition to Plaintiff's motion *in limine*, City Defendants also note that they "make no assurances or promises to call" witnesses on their witness list that Plaintiff seeks to examine.  Dkt. No. 200-10 at 24.  In his original witness list, Plaintiff listed seven SPD officers and asserted "[i]n the interest of efficiency, Plaintiff will examine [Plaintiff's SPD Witnesses] during Defendants' case-in-chief." *See* Dkt. No. 195.  None of these officers are named on Plaintiff's amended witness list. *See* Dkt. No. 212.  As such, this issue appears moot.  The parties are nonetheless encouraged to work in good faith to present their respective cases in an efficient manner and remain mindful of the jury's valuable time.  If Court intervention becomes necessary, this issue will be addressed at such time.

**K.     Medical Records**

City Defendants argue that Plaintiff should be precluded "from the introduction of all

medical records that do not have a sponsoring medical professional to testify as to (i)

interpretation of the contents, (ii) diagnosis, or (iii) causation; and, furthermore preclude Plaintiff

from self-diagnosing or testify his own lay opinion about medical (*i.e.*, psychological) proximate

cause or medical prognosis." Dkt. No. 182-19 at 20-25. Plaintiff contends that he should be

permitted to testify regarding his "garden-variety emotional distress" without expert support. Dkt.

No. 201 at 10-11. Upon review of Plaintiff's exhibit list, it appears Plaintiff intends to offer

medical records during trial—exhibit P-8 is labelled "medical/counseling records." *See* Dkt. No.

197 at 1.

Rule 701 of the Federal Rule of Evidence prohibits opinion testimony by lay witnesses, or

testimony based on scientific, technical, or other specialized knowledge. *See* Fed. R. Evid. 701.

"However, this Rule does not bar a witness from testifying about their factual experiences of their

own injuries." *Colson v. Mingo*, No. 18-CV-2765, 2025 WL 688832, *3 (S.D.N.Y. Mar. 4,

2025). Causation in complex medical cases tends to require the testimony of an expert witness.

*See Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46 (2d Cir. 2004) ("Where . . . the nexus between

the injury and the alleged cause would not be obvious to the lay juror, '[e]xpert evidence is often

required to establish the causal connection between the accident and some item of physical or

mental injury'") (quotation omitted). However, "when ordinary lay persons are capable

themselves of understanding the evidence and drawing the necessary inferences, an expert is not

required to opine on the cause of injury." *Byfield v. Chapman*, 141 F. Supp. 3d 221, 223

(W.D.N.Y. 2015) (citing *United States v. Castillo*, 924 F.2d 1227, 1232 (2d Cir. 1991)). "Stated

differently, when the subject-matter is less complex, jurors may draw upon their own everyday

experiences and observations to comprehend the facts and come to their own conclusions as to causation." *Id.* (citing *Fane*, 927 F.2d at 131). Indeed, "a [lay] witness may testify as to individual symptoms that he has experienced so long as he does not give a conclusion as to the underlying medical cause of such condition." *Johnson v. White*, No. 9:14-CV-00715, 2015 WL 6449126, *3 (N.D.N.Y. Oct. 23, 2015) (citing *Fane*, 927 F.2d at 131).

As such, the Court will not prohibit Plaintiff from testifying regarding his personal experience of the symptoms he claims to have suffered. The Court notes, though, that a case cited by Plaintiff discusses the risk of judicial reduction of awards for emotional damages, upon a post-trial motion for remittitur, where the only evidence provided is the plaintiff's testimony without any medical corroboration. *See Thorsen v. Cnty. of Nassau*, 722 F. Supp. 2d 277, 292 (E.D.N.Y. 2010) ("'Emotional distress awards within the Second Circuit can generally be grouped into three categories of claims: garden-variety, significant and egregious. In garden variety emotional distress claims, the evidence of mental suffering is generally limited to the testimony of the plaintiff, who describes his or her injury in vague or conclusory terms, without relating either the severity or consequences of the injury. Such claims typically lack extraordinary circumstances and are not supported by any medical corroboration. Garden variety emotional distress claims generally merit $30,000 to $125,000 awards'") (quoting *Olsen v. County of Nassau,* 615 F.Supp.2d 35, 46-47 (E.D.N.Y.2009)). The Court will not speculate as to what damages, if any, the jury might award, nor should this Memorandum-Decision and Order be read to preview how the Court might decide a motion for remittitur if the jury awards a substantial sum. The Court merely points this out because Plaintiff readily admits his intent to prove merely "garden-variety emotional distress claims." Dkt. No. 201 at 10-11.

Although Plaintiff will be permitted to testify regarding his symptoms, the Court will not permit him to submit "medical/counsel records" without expert testimony or to self-report any diagnosis based on his purported interpretation of medical records. The Court's decision is based on multiple considerations. First, according to City Defendants, Plaintiff never disclosed any medical or counseling records during discovery. *See* Dkt. No. 200-10 at 26-29. Plaintiff offers no argument to the contrary.

Second, regardless of whether such records were disclosed, Plaintiff has no expert witness on his witness list who can competently testify to interpret these records. *See* Dkt. No. 212. Courts in this Circuit routinely preclude the introduction of medical records through lay-witness testimony and prohibit plaintiffs from testifying, without expert witness corroboration, to interpretation of diagnoses or causation. *See, e.g. DuchnowskI v. Cnty. of Nassau*, 416 F. Supp. 3d 179, 183 (E.D.N.Y. 2018) ("Even if [the p]laintiff could satisfy the requirements of Rule 902(11), the Court would not permit the unfettered use of [the p]laintiff's medical records. As indicated above, many of the alleged injuries at issue here are complex in nature. For the same reasons that the court will not permit [the p]laintiff to testify about those injuries, absent a witness with specialized skill and knowledge, the Court will not permit the introduction of the records into evidence") (citing *Monk v. Bradt*, 778 F. Supp. 2d 352, 374 (W.D.N.Y. 2011)); *Pierce v. City of New York*, No. 16 CIV. 5703, 2017 WL 10188217, *3 (E.D.N.Y. June 9, 2017) (finding medical records inadmissible absent expert witness testimony and holding that the "[p]laintiff is precluded from testifying as to his belief of causation or the medical diagnosis related to his injuries. It is an unremarkable proposition that testimony regarding medical diagnoses must be based on specialized knowledge pursuant to Rules 701 and 702 and is therefore outside the scope of plaintiff's knowledge") (citing *Vogelfang v. Riverhead Cnty. Jail*, No. 04-CV-1727, 2012 WL

1450560, *6 (E.D.N.Y. Apr. 19, 2012)); *Johnson*, 2015 WL 6449126, at *3 ("A lay witness may

not testify as to the underlying cause of a medical condition that is beyond his or her personal

knowledge.  However, a witness may testify as to individual symptoms that he has experienced so

long as he does not give a conclusion as to the underlying medical cause of such condition")

(citing *Saari v. Merck & Co., Inc.*, 961 F. Supp. 387, 392 (N.D.N.Y. 1997); *Fane*, 927 F.2d at 131

(internal citations omitted).

Accordingly, City Defendants' motion is granted in the following regard: Plaintiff may not

introduce "medical/counseling records" at trial and may not testify regarding diagnoses or the

underlying cause of a medical condition that is beyond his personal knowledge.  Should Plaintiff

identify certain medical records which relate only to the alleged injures and do not require

specialized knowledge or skill to understand, Plaintiff is granted leave to seek their introduction at

trial.

## L.    Newspaper Articles and Vehicle Towing Receipts

After the submission of Plaintiff's exhibit list, City Defendants argue that exhibit P-5,

labelled "Newspaper Articles" should be precluded on hearsay grounds.  *See* Dkt. No. 200-10 at

29.  Although it is generally true that "Newspaper articles are usually inadmissible hearsay[,]"

*Mandal v. City of New York*, No. 02 CIV. 1234, 2006 WL 3405005, *1 (S.D.N.Y. Nov. 26, 2006)

(collecting cases), the Court has not yet observed how Plaintiff intends to use this evidence.

Accordingly, a decision on this issue will be reserved for trial, where it can be placed in the

appropriate factual context.  Plaintiff will have an opportunity to establish a foundation and

relevance for this evidence and Defendants will have an opportunity to object.

City Defendants also object to Plaintiff introducing vehicle towing and repair receipts into

evidence.  As discussed, Plaintiff's claims arising from the search and seizure of his vehicles was

previously dismissed from this action. However, merely based on a bald reading of Plaintiff's exhibit list, the Court cannot be certain how he intends to offer this evidence and for what purpose. Therefore, the Court also reserves on the issue of whether vehicle towing and/or repair receipts are admissible. Plaintiff should be prepared to explain why this evidence is relevant to a surviving claim for damages.

**M.    Opening the Door to Bad Acts**

City Defendants contend that Plaintiff's pre-trial submissions "suggest that he may open the door" to bad act evidence such as testimony that L.M. identified Plaintiff as one of her attackers. Dkt. No. 200-10 at 30. The Court cannot make a pre-trial ruling as to whether the door has been opened to specific categories of evidence. Therefore, the Court reserves ruling on this issue.

**N.    Defendants' Special Interrogatories, Jury Charges, and Verdict Sheet**

Plaintiff argues that Defendants' proposed special interrogatories, jury instructions, and verdict sheet must be "rejected" because they "impermissibly require the jury to revisit issues that the Second Circuit has already resolved." *See* Dkt. No. 201 at 9.

As reiterated many times throughout this Memorandum-Decision and Order, the Court rejects Plaintiff's misinterpretations of the Opinion. Regardless, now is not the proper time to address special interrogatories, jury instructions, or verdict sheets. Proposed jury instructions and verdict sheets will be addressed at a charge conference before summations are delivered, where both sides will have the opportunity to argue their respective positions.

City Defendants' proposed special interrogatories are related to the issue of qualified immunity. *See* Dkt. No. 188. This filing is consistent with the Court's Trial Order which states:

> Where applicable, if defense counsel believes that one or more of the defendants is entitled to qualified immunity, he or she shall submit proposed Special Interrogatories to be submitted to the jury. These interrogatories shall consist of questions of fact to be answered by the jury so that the Court may rule, as a matter of law, whether one or more of the defendants is entitled to qualified immunity.

Dkt. No. 172 at 4.

The Court will provide special interrogatories to the jury only after a finding of liability as to any of Plaintiff's claims to which qualified immunity is an affirmative defense. Proposed special interrogatories are meant merely to assist the Court with the process of obtaining findings of fact related to qualified immunity if it becomes necessary to do so. Based upon the jury's factual findings, the Court would then rule on qualified immunity as a matter of law. This process is consistent with the Second Circuit's directives that "[t]he court should [first] charge the jury on [the constitutional claims], but not on qualified immunity. If the jury returns [an affirmative] verdict of [a constitutional violation] against [the defendant(s)], the court should then decide the issue of qualified immunity." *Stephenson v. Doe*, 332 F.3d 68, 80 (2d Cir. 2003). This process will be the subject of a later conference, where the parties will have the opportunity to argue their respective positions, if the need arises. As such, Plaintiff's request that City Defendants' proposed special interrogatories be outright rejected pre-trial is denied.

**O.    Reference to City Defendants' Counsel as "City Attorneys"**

City Defendants request that Plaintiff be precluded from referring to their counsel as "City attorneys." *See* Dkt. No. 182-19 at 26. Plaintiff does not address this argument in his opposition to City Defendants' motion. *See, generally*, Dkt. No. 201.

This portion of City Defendants' motion is granted.  *See Simpson v. The City of New York*, No. 12 CIV. 6577, 2015 WL 5918182, *6 (S.D.N.Y. Oct. 9, 2015) ("This is a standard request in these types of actions.  Defendant's concern is that connecting counsel to the City suggests involvement by the City; this, in turn, could cause the jury to view liability less critically, and suggest the presence of a deep pocket.  The Court agrees that this is a valid concern.  While the City is involved in this litigation, that fact is irrelevant to the determination of liability and damages which should be based solely on the facts and the law").

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Plaintiff's motion *in limine* (Dkt. No. 191) is **GRANTED in part and DENIED in part** for the reasons stated above; and the Court further

**ORDERS** that City Defendants' motion *in limine* (Dkt. No. 182) is **GRANTED in part, DENIED in part, and RESERVED ON in part** for the reasons stated above; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: January 16, 2026
       Albany, New York

Mae A. D'Agostino
U.S. District Judge