UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

TROY ALEXANDER,

                                        Plaintiff,

          vs.                                                     5:17-CV-1195
                                                                  (MAD/TWD)
CITY OF SYRACUSE, *et al.*,

                                        Defendants.

_____

APPEARANCES:                              OF COUNSEL:

TROY ALEXANDER
Syracuse, New York 13205
Plaintiff, *Pro se*

CITY OF SYRACUSE CORPORATION         DANIELLE R. SMITH, ESQ.
COUNSEL                              HEATHER L. DAVIS, ESQ.
233 East Washington Street           TODD M. LONG, ESQ.
Room 300 City Hall
Syracuse, New York 13202
Attorneys for Defendant City of Syracuse
and Detective Rory Gilhooley

ONONDAGA COUNTY DEPARTMENT           JOHN E. HEISLER , JR., ESQ.
OF LAW                               ERIN M. WELCH FAIR, ESQ.
John H. Mulroy Civic Center          KATHERINE B. FELICE, ESQ.
421 Montgomery Street, 10th Floor
Syracuse, New York 13202
Attorneys for Defendant County of Onondaga

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

## I. INTRODUCTION

Plaintiff Troy Alexander commenced this action pursuant to 42 U.S.C. § 1983 and state

law, alleging that Defendants Rory Gilhooley ("Defendant Gilhooley"), the City of Syracuse (the

"City") (collectively, with Defendant Gilhooley, "City Defendants"), and the County of Onondaga (the "County") subjected him to false arrest, improperly searched his home and seized his vehicles, initiated a malicious prosecution, and improperly kept him incarcerated after he posted bail, in the course of investigating a gang rape and torture that had allegedly occurred from the afternoon of October 23, 2016, until the early morning of October 24, 2016. *See* Dkt. Nos. 1, 39.

After nearly eight years of litigation, including an appeal to the Second Circuit, this matter was reassigned to the undersigned on May 13, 2025. *See* Dkt. No. 162. A jury trial commenced on January 27, 2026. *See* Dkt. No. 224. On January 29, 2026, Plaintiff concluded the presentation of his case and Defendants moved for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure. *See* Dkt. No. 227. The Court granted City Defendants' motion in part and granted the County's motion in its entirety, dismissing Plaintiff's false imprisonment claim. *See id.* As false imprisonment was the only claim remaining against the County at trial, the County was dismissed from the action. *See id.* The jury returned a verdict on February 3, 2026, finding in City Defendants' favor on the remaining claims. *See* Dkt. Nos. 232, 234.

Presently before the Court is Plaintiff's motion for a new trial. *See* Dkt. No. 237.[1] For the following reasons, Plaintiff's motion is denied.

## II. DISCUSSION

**A.    Legal Standards**

Rule 59 of the Federal Rules of Civil Procedure provides that a new trial may be granted "after a jury trial, for any reason for which a new trial has heretofore been granted in an action at

---

[1] Plaintiff has filed an appeal before the United States Court of Appeals for the Second Circuit. *See* Dkt. No. 235.

law in federal court." Fed. R. Civ. P. 59(a)(1)(A). The Second Circuit has interpreted this standard to permit the granting of new trials when "in the opinion of the district court, the jury has reached a seriously erroneous result or . . . the verdict is a miscarriage of justice." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir. 1998) (citation and internal quotation marks omitted).

Under Rule 59(a), "[u]nlike judgment as a matter of law, a new trial may be granted even if there is substantial evidence supporting the jury's verdict." *Id.* at 134. In considering a motion for a new trial, the court is free to weigh the evidence independently "and need not view it in the light most favorable to the verdict winner." *Manley v. Ambase Corp.*, 337 F.3d 237, 244-45 (2d Cir. 2003) (citation and internal quotation marks omitted). The standard for granting such a motion is high and rulings on motions under Rule 59(a) "are committed to the sound discretion of the district court." *Severino v. Am. Airlines*, No. 07-CV-941, 2009 WL 1810014, *2 (S.D.N.Y. June 24, 2009) (quoting *Malmsteen v. Berdon, LLP*, 595 F. Supp. 2d 299, 304 (S.D.N.Y.2009)) (internal quotation marks omitted). "While a '[j]ury's credibility assessments are entitled to deference, these principles of deference to the jury do not override the trial judge's duty to see that there is no miscarriage of justice.'" *Livingston v. Escrow*, No. 08-CV-6576, 2014 WL 1466469, *2 (W.D.N.Y. Apr. 15, 2104) (citation omitted). However, "[t]he Second Circuit has instructed district courts to 'abstain from interfering with [a jury] verdict unless it is quite clear that the jury has reached a seriously erroneous result' that would result in 'a miscarriage of justice.'" *Fioto v. Manhattan Woods Golf Enter., LLC.*, 304 F. Supp. 2d 541, 545-46 (S.D.N.Y. 2004) (quoting *Bevevino v. Saydjari*, 574 F.2d 676, 684 (2d Cir. 1978)).

As relevant here,[2] "a motion for a new trial based on the erroneous admission of evidence is warranted only where the court made substantial errors in admitting the evidence." *Ojeda v. Metro. Transp. Auth.*, 477 F. Supp. 3d 65, 77 (S.D.N.Y. 2020), *aff'd*, 41 F.4th 56 (2d Cir. 2022) (citing *Stampf v. Long Island R.R. Co.*, 761 F.3d 192, 202 (2d Cir. 2014)).  To grant a new trial on the basis of substantial errors in admitting evidence, a court must find that "the introduction of such evidence 'was a clear abuse of discretion *and* was so clearly prejudicial to the outcome of the trial that [the court is] convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'"  *Id.* (quoting *Nimely v. City of New York*, 414 F.3d 381, 399 (2d Cir. 2005)) (emphasis in original).  Further, "[i]t is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'"  *Sequa Corp v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).

"A motion to alter judgment pursuant to Federal Rule of Civil Procedure 59(e) may be granted 'only if the movant satisfies the heavy burden of demonstrating an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  *Fireman's Fund Ins. Co. v. Great Am. Ins. Co.*, 10 F. Supp. 3d 460, 475 (S.D.N.Y. 2014) (quoting *Hollander v. Members of the Bd. of Regents of the Univ. of the State of N.Y.*, 524 Fed. Appx. 727, 729 (2d Cir. 2013)).  "A Rule 59(e) motion 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior

---

[2] "A new trial may be granted . . . when the jury's verdict is against the weight of the evidence." *DLC Mgmt. Corp.*, 163 F.3d at 133 (citations omitted).  However, even read liberally, Plaintiff's submissions do not raise arguments regarding whether the jury's verdict was against the weight of the evidence.  Instead, he contends that alleged discovery violations and erroneous evidentiary rulings resulted in "manifest injustice," warranting a new trial.  Dkt. No 237 at 5.

to the entry of judgment.'"  *4 Pillar Dynasty LLC v. N.Y. & Co., Inc.*, 933 F.3d 202, 216 (2d Cir. 2019) (quoting *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008)).[3]

"Federal Rule of Civil Procedure 60(b) governs motions for relief from a final judgment or order and provides six independent grounds for relief."  *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005).  Rule 60(b) provides that a court may relieve a party from final judgment for the following reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud . . . , misrepresentation, or other misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).[4]  The six provisions of Rule 60(b) are mutually exclusive, *see Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 393 (1993), and a court "may treat a motion to vacate a prior judgment as having been made under 60(b)(6) only if the other, more specific grounds for relief encompassed by the rule are inapplicable," *Maduakolam v. Columbia Univ.*, 866 F.2d 53, 55 (2d Cir. 1989) (citations omitted).  "Rule 60(b)(6) . . . is a 'grand reservoir of equitable power to do justice in a particular case.'"  *Stevens v. Miller*, 676 F.3d 62, 67 (2d Cir. 2012) (quoting *Matarese v. LeFevre*, 801 F.2d 98, 106 (2d Cir. 1986)).  "But that reservoir is not

---

[3]  Plaintiff does not cite Rule 59(e) as a basis for his motion; he raises only Rule 59(a).  *See* Dkt. No. 237 at 1.  Nevertheless, the Court considers these standards in an abundance of caution, as Plaintiff's motion sounds more in Rule 59(e) than Rule 59(a).

[4]  Plaintiff does not move for relief under Rule 60 of the Federal Rules of Civil Procedure.  *See generally* Dkt. No. 237.  Nevertheless, in light of Plaintiff's *pro se* status, the Court will also consider his motion under the Rule 60 standards, where applicable.  *See Tenemille v. Town of Ramapo*, No. 18-CV-724, 2022 WL 2047819, *7 (S.D.N.Y. June 7, 2022) ("[G]iven Plaintiff's status as a *pro se* litigant and the Court's concomitant obligation to consider his submissions to raise the strongest possible arguments . . . the Court evaluates his motion under Rule 60(b)(6)").

bottomless.  Recognizing Rule 60(b)(6)'s potentially sweeping reach, courts require the party seeking to avail itself of the Rule to demonstrate that 'extraordinary circumstances' warrant relief." *Id.* (citations omitted); *see also Nemaizer v. Baker*, 793 F.2d 58, 61 (2d Cir. 1986); *United States v. Bank of N.Y.*, 14 F.3d 756, 759 (2d Cir. 1994).

**B.     Plaintiff's Motion for a New Trial**

Plaintiff provides five reasons why he believes he is entitled to a new trial: (1) Defendants withheld discovery evidence—namely, certain video footage—and the Court is responsible for Plaintiff's inability to produce such evidence at trial; (2) Defendant Gilhooley and Deputy Chief David Metz ("Deputy Chief Metz") testified improperly regarding implied consent; (3) Plaintiff's criminal prosecution for his "drug charges" was unconstitutional "double jeopardy"; (4) Plaintiff was "taken advantage of" after his prior attorney, Felicia Pitts-Davis ("Attorney Pitts-Davis"), withdrew because he was not able to depose two Syracuse Police Department officers and City Defendants "violated [Magistrate Judge Dancks'] order that no summary judgment would be filed until all discoveries were made"; and (5) the Court erred in dismissing Plaintiff's false imprisonment claims pursuant to Rule 50.  Dkt. No. 237 at 4-8.  City Defendants and the County oppose the motion, *see* Dkt. Nos. 243, 248, and Plaintiff filed separate replies to each opposition, *see* Dkt. Nos. 246, 250.[5]

---

[5]  Plaintiff also submitted what appears to be an affidavit from Nate Ashkar, the purported owner of Middle East Market.  *See* Dkt. No. 250-1.  The document is labeled "affidavit" and says it is "made for the legal purpose of [this] case[.]"  *Id.* at 1.  However, the document is not notarized and does not otherwise substantially comply with the requirements for unsworn declarations because it does not state that it is made "under the penalty of perjury."  *See* 28 U.S.C. § 1746; *In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483, 488 (2d Cir. 2013) ("We hold that 28 U.S.C. § 1746 requires that a certification of the truth of a matter be expressly made under penalty of perjury.  Any other result would be contrary to the plain language of the statute and the objective sought to be advanced by it").  Therefore, the Court cannot, and does not, consider this unsworn statement.

City Defendants argue that (1) they did not violate their discovery obligations; (2) any purported inconsistencies in Defendant Gilhooley's testimony do not warrant a new trial; (3) Plaintiff deposed Deputy Chief Metz before trial and was, therefore, not prejudiced by his implied consent testimony; (4) Plaintiff never asserted a Fifth Amendment Double Jeopardy claim; (5) Plaintiff's decision not to seek additional discovery after his initial attorney's withdrawal is not a basis for a new trial; and (6) the Court's dismissal of Plaintiff's false imprisonment claims was not erroneous. *See* Dkt. No. 248-15 at 6-20. The County contends that Plaintiff has not presented any newly discovered evidence and that, regardless, Plaintiff has not demonstrated that a new trial on such grounds is warranted. *See* Dkt No. 243 at 3-5.

### 1. Video Evidence

First, Plaintiff argues that the Court should "overturn the verdict . . . or at the very least hold a hearing to determine whether the [Court] loss [sic] or destroyed [Plaintiff's] video from middle east market" and consider whether Defendants "should have been sanctioned under [R]ule 37 for not making the video available, along with other cops camera videos." Dkt. No. 237 at 4. Plaintiff states that "just days before trial [he] realized he could not get his thumb drive to work . . . so he asked the [Court] clerk to provide him with a copy." *Id.* at 5. According to Plaintiff, "it was determined that the video was not able to be played or given to [him] for trial which was a [R]ule 37 . . . violation[] . . . ." *Id.* As City Defendants clarify, the videos Plaintiff refers to are "security camera footage from the Middle East Market and Syracuse Police Department's Criminal Observation and Protection System ("COPS") camera videos[,]" (hereinafter, the "Videos"). Dkt. No. 248-15 at 6.

"[A] sanction for a discovery violation as severe as granting a new trial requires that the court find 'willfulness, bad faith, or any fault,' and that 'the opposing party has been seriously

prejudiced and that no lesser sanction is sufficient to deter discovery abuses.'" *Health All. Network, Inc. v. Cont'l Cas. Co.*, 245 F.R.D. 121, 128 (S.D.N.Y. 2007), *aff'd*, 294 Fed. Appx. 680 (2d Cir. 2008) (quoting *Yuan ex rel. Liu v. Rivera*, No. 96-CV-6628, 2000 WL 365036, *2 (S.D.N.Y. Apr. 7, 2000)). In other words, "the sanction of granting a new trial in response to a discovery violation is a 'drastic' penalty, only appropriate in 'extreme' circumstances, where a showing of willfulness or bad faith and prejudice are necessary in imposing such a severe penalty." *James v. Melendez*, 567 F. Supp. 2d 480, 490 (S.D.N.Y. 2008) (quoting *Health All. Network*, 245 F.R.D. at 128-29).

On January 20, 2026, one week before trial was scheduled to begin, Plaintiff's counsel filed a letter seeking "permission to obtain a playable copy of a video previously filed on the docket." Dkt. No. 216 at 1. In response, City Defendants represented that they had not disclosed a copy of the video during discovery and, instead, it was Plaintiff who disclosed the video at issue. Dkt. No. 217 at 1. In a subsequent letter, Plaintiff's counsel clarified that the video sought was the Middle East Market video, which "cover[] the relevant time period." Dkt. No. 218 at 1.[6] The video footage was on a USB drive that had apparently become corrupted, rending the file unplayable. *See* Dkt, No. 216 at 1. Because Plaintiff could not locate an uncorrupted version of the Videos to use at trial, he requested the Court provide the copy that was submitted with his summary judgment briefing in 2021. Dkt. No. 218 at 2. If such copy could not be provided,

---

[6] Although the subject of Attorney Boies' letters was ostensibly limited to video from Middle East Market, and not the COPS Camera videos, City Defendants have, "in an abundance of caution," also addressed the COPS Camera videos. *See* Dkt. No. 248-15 at 6 n.3. Because Plaintiff's motion is not entirely clear regarding which videos are referenced throughout different arguments in his motion, *see generally* Dkt. No. 237, the Court will address the Videos collectively where appropriate.

Plaintiff requested that "that the jury be permitted to hear evidence concerning the missing footage and the inferences that may fairly be drawn from its absence." *Id.*

As shown in an email attached to Plaintiff's motion, Court staff attempted to locate a copy of the Videos for Plaintiff. *See* Dkt. No. 237-1 at 10. These attempts were unavailing, as the USB drive containing the Court's copy of the video had apparently been sent to the Second Circuit after Plaintiff appealed Senior District Judge Hurd's decisions granting summary judgment to Defendants in 2021 and 2022. *See id.*

On the first day of trial, before jury selection, the Court addressed the parties' contentions regarding the Videos. *See* Dkt. No. 224 at 1. The Court explained that its attempts to secure a copy of the USB drive and view and electronic version of the video were unsuccessful. *See id.* Although the Court was not in possession of a functioning video file, Plaintiff was advised that he would be permitted to seek out an expert to open the corrupted file. *See id.* Trial commenced as scheduled and Plaintiff did not present the Videos.

To clarify, Plaintiff does not contend that City Defendants failed to produce materials while this action was in its discovery phase; he expressly acknowledges that he possessed copies of the Videos "during the course of discovery." Dkt. No. 237 at 12 ("[Plaintiff] was provided a copy of the Middle East Market video during the course of discovery . . . by [Defendants]"); Dkt. No. 237 at 13 ("Defendants gave [P]laintiff the [COPS] camera footage that cannot play"). Instead, Plaintiff argues that he should be awarded a new trial because City Defendants did not provide his counsel, Attorney Jerry Boies ("Attorney Boies"), with a *reproduction* of working copies. *See id.* at 5. The Court disagrees.

With their opposition papers, City Defendants have submitted emails demonstrating their compliance with Magistrate Judge Dancks' order that discovery not filed on the docket be sent to

9

Plaintiff's counsel.  *See* Dkt. No. 163; Dkt. No. 248-2; Dkt. No. 248-3; Dkt. No. 248-7.  As discussed, in letters filed before trial, City Defendants represented that they had not disclosed a copy of the video during discovery.  *See* Dkt. No. 217 at 1.  However, in preparing to respond to Plaintiff's pending motion for a new trial, City Defendants' counsel discovered that they had, in fact, sent the Videos to Plaintiff's counsel.  *See* Dkt. No. 248 at ¶¶ 21-26 (describing the video files disclosed to Attorney Boies); Dkt No. 248-15 at 9 n.6 ("The COPS Camera videos had also been produced").  Although the proprietary software necessary to view the videos causes some complications, City Defendants' counsel was able to play all three videos from folders that were reproduced to Attorney Boies.  *See* Dkt. No. 248 at ¶ 23.

As such, City Defendants appear to have satisfied their discovery obligation by forwarding Attorney Boies all discovery, including folders containing the Videos and software needed to view the Videos.  *See* Dkt. No. 248-1 (certificate of service).  Indeed, in his current briefing, as well as during his deposition, Plaintiff explicitly represented that he was provided with a copy of the Videos and had viewed them.  *See* Dkt. No. 237 at 12-13; Dkt. No. 248-11 at 6-14 (partial transcript of Plaintiff's October 21, 2020 deposition, wherein Plaintiff testified to possessing and viewing the Videos).  Plaintiff's failure to locate the Videos in the discovery provided by Defendants does not warrant a new trial.

Moreover, in his October 21, 2020 deposition, Plaintiff also complained that "certain pieces" of the videos he viewed were "missing."  Dkt. No. 248-11 at 8.  Thus, Plaintiff was aware, more than five years ago, of the issues he now contends prejudiced him at trial.  Plaintiff's decision to raise this issue on the eve of trial—instead of seeking technical assistance in the months or years prior—does not constitute a discovery violation by City Defendants.

10

Plaintiff has failed to present any evidence of willfulness, bad faith, or fault on the part of Defendants. *See James*, 567 F. Supp. 2d at 490. Plaintiff's motion is, therefore, denied to the extent he seeks a new trial on the basis of alleged discovery violations.[7]

Alternatively, construing Plaintiff's submissions liberally, he also argues that the Court should grant him a new trial because the Videos constitute new evidence. *See generally* Dkt. No. 237. A party seeking a new trial based upon "newly discovered evidence" must establish the following:

> (1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching.

*Becnel v. Deutsche Bank AG*, 838 F. Supp. 2d 168, 171 (S.D.N.Y. 2011) (quoting *United States v. Int'l Broth. of Teamsters,* 247 F.3d 370, 392 (2d Cir. 2001)). Even assuming *arguendo* that the

---

[7] Plaintiff also contends that this Court failed to provide the Second Circuit with the Videos, thereby causing error in the Circuit's Opinion dated March 14, 2023. *See* Dkt. No. 237 at 4-5. Plaintiff requests "a hearing to determine whether the [N]orthern [D]istrict los[t] or destroyed [his] video from the middle east market" and whether Defendants should be sanctioned. *See id.* at 1. To briefly reiterate the procedural history, Senior District Judge Hurd granted summary judgment in favor of Defendants in December 2021 and January 2022, Plaintiff appealed, and, on March 14, 2023, the Second Circuit remanded the case for trial after finding triable issues of fact precluded summary judgment on certain of Plaintiff's claims. *See* Dkt. No. 213 at 6 (recounting procedural history). Plaintiff submitted a USB Drive that purportedly contained the Middle East Market video as Exhibit 10 to his response to City Defendants' motion for summary judgment. *See* Dkt. No. 125-1 at 71 ("Exhibit #10 Video"); Dkt. No. 126 ("USB Drive: Exhibit #10 of [Plaintiff's] Response was received and is on file in the Syracuse Clerk's office and is not available for public viewing"). All exhibits that were submitted with the parties' summary judgment briefing (including Plaintiff's Exhibit 10) were sent to the Second Circuit after Plaintiff appealed. *See* Dkt. No. 152 (certifying, pursuant to a "request from the United States Court of Appeals," that the USB Drive purportedly containing Plaintiff's Exhibit 10 was sent by mail to the Second Circuit). Thus, Plaintiff's baseless accusation that this Court "destroyed" or failed to provide the Middle East Market video to the Second Circuit will not be entertained. Similarly, because Plaintiff had the Videos throughout the pendency of this action and City Defendants reproduced the Videos to Attorney Boies, no hearing regarding sanctions is warranted.

Videos are newly discovered evidence and would not have been merely cumulative or impeaching, Plaintiff cannot satisfy the second or third elements of this test.

With regard to the second element, Plaintiff was not "justifiably ignorant of" the Videos. As discussed, Plaintiff had a copy of the Videos during the pendency of this action and City Defendants disclosed an additional copy to Attorney Boies before trial. *See* Dkt. No. 237 at 12; Dkt. No. 248 at ¶¶ 5-23.

As to the third element, the Videos were of limited evidentiary value and Plaintiff has not demonstrated how they would have changed the outcome of trial. Plaintiff presents two reasons why he believes the Videos were relevant: (1) to establish that L.M. was not victimized at his home; and (2) to establish that Defendant Gilhooley "was not part of the initial police [entry] of the house . . . ." Dkt. No. 237 at 6, 12-13; Dkt. No. 250 at 2. The Court will address these arguments in-turn.

First, Plaintiff's civil claims related to his arrest and prosecution for L.M.'s sexual assault were dismissed and not reinstated on appeal. *See* Dkt. No. 153 at 19 n.6. As the Court recounted in its Memorandum-Decision and Order addressing the parties' *in limine* motions, the claims remaining for trial were: (1) an alleged Fourth Amendment violation for the entry and seizure of Plaintiff's home, including any initial warrantless searches that may have occurred (a § 1983 claim against Defendant Gilhooley); (2) false arrest claims arising from Plaintiff's arrest for burglary and related charges (a § 1983 claim against Defendant Gilhooley and New York State law claim against Defendant Gilhooley and the City); (3) false imprisonment claims arising from the failure to release Plaintiff after he posted bail (New York State law claims against the City and the County); and (4) malicious prosecution claims arising from Plaintiff's arrest and prosecution for burglary and related charges (a § 1983 claim against Defendant Gilhooley and New York

State law claims against Defendant Gilhooley and the City).  *See* Dkt. No. 213 at 3-4.  Thus, it is irrelevant whether the Videos support Plaintiff's theory that he was unlawfully arrested and prosecuted for L.M.'s assault.

Second, Plaintiff contends that "[t]he video will show that officer Gilhooley was not a part of the initial police entering of the house."  Dkt. No. 237 at 6.  However, City Defendants maintain that the Videos, which were "included in the City Defendants' reproduction to Attorney Boies[,]" only contain recordings "from approximately 2:00 PM on October 23, 2016, to 12:00 PM on October 24, 2016" and "do not capture the Syracuse Police Department's arrival at 1906 S State later in the afternoon/evening on October 24, 2026."  Dkt. No. 248 at ¶ 23 (emphasis omitted).  Additionally, City Defendants contend that the Middle East Market videos are of limited (or no) evidentiary value because they "capture only a small portion of the front of Plaintiff's residence and are of such poor quality as to be nearly indecipherable."  Dkt. No. 248-15 at 12.

The Court has no reason to doubt City Defendant's representations.  But, regardless of whether City Defendants' representations are accurate, Plaintiff has failed to demonstrate that he would have been able to use the Videos at trial.  Indeed, even if the Videos did depict the relevant time period, Plaintiff's witness list did not include any witnesses for purposes of authenticating or admitting the Videos into evidence.  *See* Dkt. No. 195 (Plaintiff's original witness list, containing no intended witness to testify regarding the Videos); Dkt. No. 212 (Plaintiff's updated witness list, containing no witness for the Videos).  As such, Plaintiff has failed to demonstrate that this evidence was admissible or would have likely changed the outcome at trial.

Accordingly, even if the Videos were newly discovered evidence—a conclusion that would strain credulity—Plaintiff has failed to demonstrate that he would be entitled to a new trial on such grounds

### 2. Implied Consent Testimony

Plaintiff also takes issue with Defendant Gilhooley and Chief Deputy Metz's trial testimony regarding implied consent to enter his residence. *See* Dkt. No. 237 at 6. Specifically, Plaintiff argues that (1) Defendant Gilhooley changed "the theory at trial" from express to implied consent; and (2) the Court erred in permitting Deputy Chief Metz to testify at trial "with this new theory of implied consent." *See id.*

As an initial matter, City Defendants are correct that Plaintiff has attached no deposition or trial transcripts to his motion. *See* Dkt. No. 248-15 at 14. Without specific record citations, it would seem improbable that Plaintiff could demonstrate inconsistencies that would warrant a new trial. *See id.*[8] However, even setting aside the absence of record citations, the Court finds Plaintiff's arguments are without merit.

As for Defendant Gilhooley's testimony, the Court interprets Plaintiff's argument to mean that Defendant Gilhooley's testimony at trial was inconsistent with his pretrial deposition testimony. *See* Dkt. No. 237 at 6. Again, without the benefit of comparing deposition and trial testimony transcripts, identifying inconsistencies in testimony is an impossible task. But, even if

---

[8] To be sure, Plaintiff's failure to attach transcripts or cite to the record was not a matter of understandable ignorance. He requested, and received, full-day transcripts for the trial proceedings on January 28 and January 29, 2026. *See* Dkt. Nos. 239, 240, 241. The entirety of Deputy Chief Metz's testimony took place on January 29, 2026. *See* Dkt. No. 227 at 2-3. Likewise, Defendant Gilhooley's direct examination and a significant portion of his cross-examination were conducted on January 29, 2026. *See id.* Plaintiff had the relevant transcript, but chose not to cite it in support of his arguments in any of his three submissions. *See generally*, Dkt. Nos. 237, 246, 250.

Defendant Gilhooley's trial testimony departed from his deposition testimony, Plaintiff is not entitled to a new trial.

Plaintiff had a full and fair opportunity at trial to impeach Defendant Gilhooley. Indeed, "if a party is contradicting prior statements . . . preclusion is not the appropriate remedy." *Van Brunt-Piehler v. Absolute Software, Inc.*, 744 F. Supp. 3d 277, 299 (W.D.N.Y. 2024). "Rather, the opposing party should use the prior evidence to impeach the relevant witness's testimony." *Id.* Plaintiff is not entitled to a new trial on the basis that he failed to impeach a witness. *See id.*; *see also Campbell v. City of New York*, No. 99-CV-5129, 2003 WL 660847, *3 (S.D.N.Y. Feb. 27, 2003), *aff'd*, 93 Fed. Appx. 315 (2d Cir. 2004) ("A jury's credibility determinations are entitled to deference, and the court should not ordinarily set aside a verdict where an issue depends upon the jury's credibility determination") (citing *United States v. Landau,* 155 F.3d 93, 105 (2d Cir. 1998) and *Metromedia Co. v. Fugazy,* 983 F.2d 350, 363 (2d Cir. 1992)).

As for Deputy Chief Metz, whether he was permitted to testify was the subject of pretrial motion practice. In their *in limine* motion, City Defendants requested a ruling that Deputy Chief Metz be permitted to testify at trial, despite the fact that the record was unclear regarding whether he was properly identified in City Defendants' Rule 26 disclosures. *See* Dkt. No. 182-19 at 13-17.

On January 16, 2026, the Court issued a Memorandum-Decision and Order on the motions *in limine*. *See* Dkt. No. 213. As the Court explained, "'[u]nder Rule 37(c), if a party fails to provide the information required by Rule 26(a), "the party is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."'" *Id.* at 32 (quoting *Glob. Weather Prods. LLC v. Reuters News & Media LLC*, No. 24-CV-507, 2025 WL 2652860, *4 (S.D.N.Y. Sept. 16, 2025)). Employing the four-factor test relevant to determining whether to preclude Deputy Chief Metz from testifying, *see id.*

15

at 32-33 (citing *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 296 (2d Cir. 2006)), the Court ruled, in relevant part, as follows:

> There is no doubt that [Deputy Chief] Metz's testimony is important to the narrative of City Defendants' case, as he "is one of the only— if not the only—other witnesses who was present when [Defendant] Gilhooley entered 1906 S. State and recalls entering the premises over nine years later." Dkt. No. 182-19 at 14 (cleaned up). City Defendants claim that [Deputy Chief] Metz's testimony is, therefore, critical to contradict any assertions by Plaintiff's witnesses that entry into the residence was by force rather than consent. *See id.*
>
> . . .
>
> Balancing all of the relevant factors and taking careful consideration of the parties' arguments, the Court is not inclined to out-right preclude [Deputy Chief] Metz from testifying at trial. However, there is significant potential prejudice that would stem from permitting testimony from a witness never deposed by Plaintiff. Thus, the Court orders that, if City Defendants intend to call [Deputy Chief] Metz at trial, City Defendants must make him available for a deposition by Plaintiff at a time convenient for Plaintiff's counsel . . . . City Defendants are responsible for the costs of the deposition.

*Id.* at 33-35.

"Courts in this Circuit recognize that preclusion of evidence pursuant to Rule 37(c)(1) is a drastic remedy and should be exercised with discretion and caution." *Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004) (citations and footnote omitted). "The purpose of the rule is 'to prevent the practice of "sandbagging" an adversary with new evidence,' . . . and 'to alert an opposing party of the need to take discovery of the named witness[.]'" *Orsaio v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 6:17-CV-00685, 2022 WL 351827, *11 (N.D.N.Y. Jan. 14, 2022), *aff'd*, No. 22-596, 2023 WL 3410554 (2d Cir. May 12, 2023) (first quoting *Johnson Elec. N. Am. v. Mabuchi Motor Am. Corp.*, 77 F. Supp. 2d 446, 458 (S.D.N.Y. 1999) and then quoting

16

*Pal v. N.Y. Univ.*, No. 06-CV-5892, 2008 WL 2627614, *4 (S.D.N.Y. June 30, 2008)). Indeed, Rule 37(c)(1) itself states that "instead of [a preclusion] sanction, the court, on motion and after giving an opportunity to be heard . . . may impose other appropriate sanctions[.]" Fed. R. Civ. P. 37(c)(1)(C); *see Davis*, 469 F.3d at 298.

Plaintiff had the opportunity to—and did—present arguments as to why he believed the Court should preclude Deputy Chief Metz from testifying at trial. *See* Dkt. No. 201 at 9-10. After carefully considering the parties' arguments and the relevant factors, the Court determined that, instead of precluding Deputy Chief Metz's testimony, the appropriate sanction would be to allow Plaintiff to depose him before trial. *See* Dkt. No. 213 at 31-35. The sanction imposed was well-within this Court's discretion and Plaintiff has not demonstrated that the Court's decision was erroneous or prejudicial.

City Defendants produced Deputy Chief Metz for a deposition on January 20, 2026. *See* Dkt. No. 248-12. In response to questions asked by Attorney Boies, Deputy Chief Metz testified at his deposition that he "was the first person at the door" of 1906 S. State, a woman answered after he knocked, and the woman "stepped back and allowed [officers] inside the residence." *Id.* at 5-7. Thus, Plaintiff had an opportunity, before trial, to probe Deputy Chief Metz's "implied consent" testimony. Presenting such testimony at trial was not impermissible "sandbagging."

For these reasons, Plaintiff's motion for a new trial is denied to the extent he contends the testimony of Defendant Gilhooley and Deputy Chief Metz regarding implied consent was improperly presented to the jury.

### 3. Double Jeopardy

During his direct examination, Plaintiff testified that, on October 26, 2016, he made an initial appearance in relation to an arrest for drug possession and burglary charges. *See* Dkt. No.

239 at 82:2-21.  Thereafter, outside the presence of the jury, the Court heard argument from both sides regarding whether Plaintiff opened the door to cross-examination regarding, *inter alia*, the drug charges.  *See id.* at 125:17-132:12.  After careful consideration, the Court observed that "Plaintiff testified repeatedly that all charges brought against him during the time in question were dismissed."  *Id.* at 133:17-19.  Thus, the Court ruled that, "[t]o the extent Defendants seek to introduce evidence that Plaintiff pled guilty to the obstruction of governmental administration in satisfaction of other charges [i.e. the drug possession and burglary charges], such evidence is relevant to the issue of dismissal of any charges."  *Id.* at 133:19-23.

Thereafter, during cross-examination, counsel for City Defendants asked Plaintiff: "[Y]ou were arrested for drug possession; is that correct?"  *Id.* at 148:25-149:1.  Plaintiff answered: "Yes."  *Id.* at 149:2.  After Plaintiff repeatedly denied that he pled guilty to obstruction of justice in satisfaction of the drug charges, defense counsel moved on to another topic.  *See id.* at 149:8-150:21.

It appears that Plaintiff now contends that: (1) it was improper for the Court to permit cross-examination on the drug charges because such testimony "implicated double [] jeopardy concerns[,]" Dkt. No. 250 at 4; and (2) he should be awarded a new trial to assert "the cause of action for possession of drugs in the [seventh] degree under double [j]eopardy[,]" Dkt. No. 237 at 6-7.  The Court disagrees.

First, permitting cross-examination during a civil trial regarding prior criminal charges does not violate the Fifth Amendment's Double Jeopardy Clause.  "The Double Jeopardy Clause provides that no 'person [shall] be subject for the same offence to be twice put in jeopardy of life or limb.'"  *Hudson v. United States*, 522 U.S. 93, 98 (1997) (quoting U.S. Const. amend. V).  "The Clause protects only against the imposition of multiple *criminal* punishments for the same

offense, . . . and then only when such occurs in successive proceedings[.]" *Id.* at 99 (internal citations omitted) (emphasis in original). Plaintiff was not criminally prosecuted for the drug charges during the civil trial held before this Court and, therefore, the Double Jeopardy Clause was not implicated.

Second, Plaintiff never brought a Double Jeopardy Clause claim pursuant to Section 1983 at any point during the pendency of this civil action. *See* Dkt. No. 1 (original complaint); Dkt. No. 33 (amended complaint); Dkt. No. 39 (second amended complaint). Plaintiff presents no authority to support his contention that this Court should (or even could) grant him a new trial to present an entirely new claim.

Relatedly, Plaintiff also appears to contend that a new trial is warranted because the Second Circuit "never addressed" double jeopardy when it decided Plaintiff's appeal of Judge Hurd's summary judgment decisions and "this [C]ourt has the power to correct injustice." *See* Dkt. No. 237 at 7. Given that Plaintiff never asserted a Double Jeopardy Clause claim, the issue was never before the Second Circuit on appeal. Regardless, this Court does not hear appeals from the Second Circuit.

### 4. Discovery Schedule

Plaintiff also argues that he should be granted a new trial because he was "taken advantage of" following Attorney Pitts-Davis' withdrawal, and City Defendants "violated the judge's order that no summary judgement would be filed until all discoveries were made." Dkt. No. 237 at 7-8. It appears that Plaintiff specifically takes issue with the fact that he did not depose two Syracuse Police Department officers which Attorney Pitts-Davis had identified as witnesses. *See id.*

On January 4, 2021 and January 13, 2021, Magistrate Judge Therese Wiley Dancks ordered that all pretrial deadlines were adjourned and the case was stayed "[i]n view of

19

[P]laintiff's counsel's election to a Syracuse City Court Judgeship."  Dkt. No. 101, 104.

Thereafter, Plaintiff moved for court-appointed counsel.  *See* Dkt. No. 105.  Magistrate Judge

Dancks denied Plaintiff's motion for counsel, but indicated pro bono trial counsel would likely be

appointed if the matter survived dispositive motions.  *See* Dkt. No. 106 at 4.  Plaintiff was also

directed to notify the Court of any new counsel by February 22, 2021.  *See id.*  On February, 2,

2021, the same day Plaintiff's motion for counsel was denied, a *Pro Se* Handbook and Notice was

issued to Plaintiff.  *See* Dkt. No. 107.  Enclosed with this packet were: (1) a copy of the Local

Rules of Practice for the Northern District of New York; (2) a copy of the *Pro Se* Handbook for

the Northern District of New York; and (3) a link to relevant forms on the Court's website.  *See id.*

at 2.

On March 1, 2021, Magistrate Judge Dancks lifted the stay, noting that, because no new

counsel appeared for Plaintiff, he was deemed to be appearing *pro se*.  *See* Dkt. No. 108.  Pretrial

deadlines were reset, with fact discovery due by April 12, 2021 and dispositive motions to be

filed by July 30, 2021.  *See id.*  On April 19, 2021, Magistrate Judge Dancks granted City

Defendants' request to extend these pretrial deadlines.  *See* Dkt. Nos. 109, 110, 111.  In relevant

part, the extended deadlines were as follows: discovery due August 30, 2021, discovery motions

due September 7, 2021, and dispositive motions due September 28, 2021.  *See* Dkt. No. 111.

On May 22, 2025, Plaintiff was appointed pro bono trial counsel.  *See* Dkt. No. 163.  But,

on May 27, 2025, Plaintiff retained Attorney Boies to represent him.  *See* Dkt. Nos. 164, 168.

On July 15, 2021, Magistrate Judge Dancks held a telephone conference.  *See* Dkt. No.

115.  According to the docket, at the conference the parties reported "discovery is on track, no

issues."  *See* Text Minute Entry, dated July 15, 2021.  In accordance with the pretrial deadlines,

20

City Defendants filed their motion for summary judgment on September 28, 2021. *See* Dkt. No. 119.

In the time between Attorney Pitts-Davis' withdrawal and the end of discovery, Plaintiff never asked for an extension of pretrial deadlines or expressed any other concerns regarding discovery. *See generally*, Docket. It was Plaintiff's responsibility "to retain an attorney or press forward with this lawsuit *pro se*." *Flynn v. Ward*, No. 9:15-CV-1028, 2015 WL 8056060, *8 (N.D.N.Y. Dec. 4, 2015) (citing 28 U.S.C. § 1654). "[P]roceeding *pro se* [did] not excuse Plaintiff of his obligation to comply with the procedural requirements set forth in the Federal Rules of Civil Procedure and the Local Rules of Practice for this District." *White v. Drake*, No. 9:10-CV-1034, 2011 WL 4478921, *8 n.13 (N.D.N.Y. Sept. 26, 2011) (collecting cases).

Indeed, "[t]here is no exception to honoring and respecting discovery orders." *LeGrande v. Adecco*, 233 F.R.D. 253, 257 (N.D.N.Y. 2005). "All litigants and litigators, including *pro ses*, must comply and when they flout their obligation, they must suffer the consequences of such action." *Id.* (citing *Baker v. Ace Advertisers' Serv. Inc.*, 153 F.R.D. 38, 40 (S.D.N.Y. 1992)); *see Waul v. Coughlin*, 177 F.R.D. 173, 178 (S.D.N.Y. 1997) ("While in certain circumstances a *pro se* litigant may be relieved of the obligations that ordinarily apply to litigants prior to trial, . . . the circumstances here do not indicate that [the plaintiff] should be relieved of the obligation to seek the Court's assistance, if such assistance is necessary, to obtain the information which he considers of importance to his lawsuit") (internal citation omitted). Plaintiff's failure to take depositions that he now believes were relevant—in hindsight, many years later—is not sufficient grounds for a new trial.

Nor is Plaintiff entitled to a new trial on the basis that City Defendants "violated the

judge's order that no summary judgement would be filed until all discoveries were made." Dkt. No. 237 at 7. Simply put, City Defendants did not violate the scheduling order. All discovery was due to be completed by August 30, 2021 and City Defendants filed their summary judgment motion on September 28, 2021, the date set by Magistrate Judge Dancks. *See* Dkt. Nos. 111, 119.

### 5. Rule 50 Decision

Lastly, Plaintiff contends that the Court erred in dismissing his false imprisonment claim pursuant to Rule 50 because "[o]n November 3[,] [P]laintiff paid his bail and it was the [C]ounty through [Assistant] District [A]ttorney Jeremy Cali that said he would hold [P]laintiff illegally until he got an indictment." Dkt. No. 237 at 8. According to Plaintiff, "[t]his was proof enough to allow trial on the [C]ounty . . . that the [D]istrict [A]ttorney['s] [O]ffice deliberately held [P]laintiff when his bail was paid and the motive was to stop [P]laintiff from testifying at the grand jury . . . ." *Id.* In support of his motion, Plaintiff attaches a transcript of a bail hearing conducted on November 3, 2016 before Acting Supreme Court Judge John J. Brunetti (the "bail hearing transcript"). *See* Dkt. No. 237-1 at 31-46.

On January 29, 2026, after the close of Plaintiff's case, the Court heard Rule 50 motions from Defendants. *See* Dkt. No. 240 at 296:21-313:4. As relevant to Plaintiff's present motion, the Court ruled as follows:

> Plaintiff offered no evidence regarding the intent of any defendant to confine him. Moreover, the record is entirely devoid of evidence regarding which department, municipality, agency, or person had control over Plaintiff's confinement and failed to act to release him. Plaintiff has failed to present evidence that could satisfy the elements of his false imprisonment claim even when considering the evidence in the light most favorable to the plaintiff and drawing all reasonable evidentiary inferences in his favor[;] there is no legally sufficient evidentiary basis for a reasonable jury to find in favor of the plaintiff. Therefore, the false imprisonment claim is dismissed.

22

*Id.* at 317:12-318:1.

Although the bail hearing transcript was on Plaintiff's trial exhibit list, he never offered it for admission into evidence during trial. *See* Dkt. No. 233 at 1 (Exhibit No. P2). Therefore, to the extent Plaintiff contends the Court failed to take this evidence into consideration, Plaintiff's argument lacks merit because the evidence was not before the Court.

And, even if this transcript had been admitted into evidence, it would not have altered the Court's decision. During his direct examination, Plaintiff testified that, on November 3, 2016, he appeared before Judge Brunetti and his bail was lowered from $500,000 to $100,000. *See* Dkt. No. 239 at 89:3-17. Plaintiff then testified that "Willis," his "family bail bondsman," paid the $100,000 bond, but Plaintiff was not released until the following day. *See id.* at 89:20-90:3. Plaintiff never called "Willis" as a witness, nor testified with first-hand knowledge as to when the bond was actually tendered.

Moreover, as the Court noted in rendering its decision on the Rule 50 motions, Plaintiff failed to present any evidence regarding (1) who/what entity was responsible for his confinement; or (2) the intent of any of the Defendants to confine him. *See* Dkt. No. 240 at 317:12-318:1. Plaintiff appears to presently contend that the bail hearing transcript is evidence of the County's intent to confine him. However, even putting aside the fact that Plaintiff has identified no witness who could have authenticated and testified regarding the bail hearing transcript at trial, at no point in the transcript does Assistant District Attorney Cali state that he "would hold [P]laintiff illegally until he got an indictment." Dkt. No. 237 at 8; Dkt. No. 237-1 at 31-46. The bail hearing transcript, therefore, does not contain evidence of any Defendants' intent.

For these reasons, the Court finds Plaintiff has not identified any errors in the Court's Rule 50 decision that warrant a new trial.[9]

### III. CONCLUSION

After carefully reviewing the entire record in this matter, Plaintiff's submissions, Defendants' submissions, and the applicable law, and for the reasons set forth above, the Court hereby

**ORDERS** that Plaintiff's motion for a new trial (Dkt. No. 237) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: August 12, 2026
Albany, New York

Mae A. D'Agostino
U.S. District Judge

---

[9] The Court has, of course, afforded Plaintiff all deference due to *pro se* litigants in rendering this Memorandum-Decision and Order. In light of Plaintiff's *pro se* status, the Court has also independently considered whether Rule 60(b)(6) would authorize a new trial for any of the reasons presented by Plaintiff. The Second Circuit has "described Rule 60(b)(6) as a catch-all provision that 'is properly invoked only when there are extraordinary circumstances justifying relief [and] when the judgment may work an extreme and undue hardship[.]'" *Metzler Inv. GmbH v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 143 (2d Cir. 2020) (quoting *Nemaizer*, 793 F.2d at 63). Plaintiff has not demonstrated any extraordinary circumstances that would entitle him to relief under Rule 60(b)(6). *See, e.g.*, *Tenemille*, 2022 WL 2047819, at *7 (looking to decisions from sister courts which held that extraordinary circumstances were not present (1) "where an incarcerated, legally blind, *pro se* plaintiff was denied meaningful access to the prison law library and to legal assistance from the facility itself"; or (2) where the movant sought to reopen default judgment due to illness that caused failure to appear) (citing *Brown v. Nelson*, No. 05-CV-4498, 2008 WL 4104040, *3 (S.D.N.Y. Aug. 29, 2008) and *New Card, Inc. v. Glenns*, No. 00-CV-4756, 2004 WL 540417 (S.D.N.Y. Mar. 18, 2004), *aff'd*, 137 Fed. Appx. 384 (2d Cir. 2005)).